In re Jay L. **SWITZER** a/k/a Jay Lawrence Switzer d/b/a Gun Hill Decorators and f/d/b/a It's Candy Time, Debtor,

**SCARSDALE NATIONAL BANK AND TRUST COMPANY, Plaintiff,**

v.

Jay L. **SWITZER** a/k/a Jay Lawrence Switzer d/b/a Gun Hill Decorators and f/d/b/a It's Candy Time, Defendant.

No. 85 Adv. 6094.

Bankruptcy No. 83 B 20590.

United States Bankruptcy Court, S.D. New York.

Jan. 3, 1986.

---

Reich & Reich, White Plains, N.Y., for debtor-defendant.

Robert G. Cuccinell, Hartsdale, N.Y., for plaintiff, Scarsdale Nat. Bank and Trust Co.

DECISION ON APPLICATION FOR DENIAL OF DISCHARGE OR IN THE ALTERNATIVE TO HAVE A DEBT DECLARED NONDISCHARGEABLE

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The plaintiff, Scarsdale National Bank and Trust Company ("Scarsdale"), com-

menced this adversary proceeding against Jay L. Switzer, a Chapter 7 debtor, for the purpose of barring his discharge under 11 U.S.C. § 727(a)(3) and (5) or, in the alternative, for a determination that the debt owed by the debtor to Scarsdale is nondischargeable under 11 U.S.C. § 523(a)(2)(B). Scarsdale contends in Count One of its complaint that the debtor's discharge should be barred because he failed to keep or preserve any recorded information including books, documents and records, from which his financial condition or business transactions might be ascertained. In Count Two of the complaint, Scarsdale maintains that the debtor's discharge should be denied because he has failed to explain satisfactorily the loss or deficiency of approximately $17,900.00 in funds held in certain bank accounts. In addition, Count Three of the complaint alleges that the debtor obtained from Scarsdale a renewal or refinancing of credit in the amount of $15,000 by use of a statement in writing respecting the debtor's financial condition which was materially false in that it showed that the debtor owned real property valued at $180,000, whereas the debtor owned no real property in his own name. Scarsdale contends that it reasonably relied upon this false statement to its detriment in extending credit so that the debtor's obligation to Scarsdale in the sum of $13,336.49 should be held to be nondischargeable. The debtor filed an answer in which he denied the plaintiff's allegations.

## FINDINGS OF FACT

1. On November 8, 1983, the debtor, Jay L. Switzer, filed with this court a petition for an adjustment of debts pursuant to Chapter 13 of the Bankruptcy Code. When he filed his Chapter 13 petition the debtor was individually engaged in the business of selling curtains, drapes and upholstery under the name "Gun Hill Decorators." The debtor had also recently closed out a retail candy store business which he had operated under the name of "It's Candy Time" for the period from March through November of 1983.

2. On April 26, 1985, the debtor consented, pursuant to 11 U.S.C. § 1307(a), to convert the Chapter 13 case to a straight bankruptcy liquidation under Chapter 7 of the Bankruptcy Code.

3. The debtor's schedule of assets filed in his Chapter 13 case states that he owns no real estate. The home in which he resides with his family at 26 Innes Road, Scarsdale, New York, is owned by his wife in her own name and is valued at $180,000, subject to a $20,000 mortgage held by the Anchor Savings Bank.

4. On December 12, 1973, the Innes Road home was originally purchased for approximately $61,700 by the debtor and his wife in their joint names from the plaintiff bank, as sole surviving trustee under the last will and testament of James Innes.

5. On July 12, 1976, the debtor and his wife transferred their home in Scarsdale, New York to the debtor's wife, individually. No consideration was paid for the transfer. The deed was recorded in the Westchester County Clerk's Office on September 7, 1976. Exhibit J in evidence.

6. On August 31, 1976, seven days before the transfer was recorded, the debtor submitted a written credit application to Scarsdale for a $4000 loan to finance interior decorating expenses. Exhibit B in evidence. The credit form contained four blank boxes to be checked by the applicant in describing his residence. These boxes are captioned "own", "rent", "jointly" and "personally". The debtor checked the box entitled "own". He did this because, as he testified, when he explained to Scarsdale's credit representative that his wife owned their home in her own name the credit representative told him to check the box captioned "own". On various subsequent credit applications during the period from 1977 to 1982 the debtor continued to check the box captioned "own" when he sought and obtained credit from Scarsdale.

7. On December 30, 1982, the debtor applied to Scarsdale for a $15,000 extension of credit in order to "help finance new business & payoff existing loan." Exhibit 4 in evidence. Once again the debtor

checked off the box captioned "own" in reference to his residence. The debtor was also required by Scarsdale to submit a financial statement in connection with this credit transaction. Exhibit 3 in evidence. In the assets column on the financial statement, the debtor listed cash on hand, $6000; cash in banks, $17,900; life insurance, $1700; securities readily marketable, $2500; real estate, $180,000; automobile, $12,000; for total assets valued at $220,100. The liabilities column on the financial statement listed notes payable to banks, $8000; notes payable to others, $7200; real estate mortgages payable, $22,000; for total liabilities of $37,200. The net worth figure is specified as $182,900, which reflects the difference between total assets of $220,100 and total liabilities of $37,200. On the reverse side of the financial statement the debtor listed the 26 Innes Road home as valued at $180,000, subject to a $22,000 first mortgage.

8. The debtor's financial statement also required a listing of all bank accounts. The debtor provided the following information: Scarsdale National Bank, $400; Peoples Savings Bank, $10,000; Peoples Savings Bank, $3500. The debtor answered the information requested with respect to securities owned by listing the fact that he owned 200 shares of stock in a firm called Mathematical Applications, Inc., purchased for $4000 and with a market value of $2500. The financial statement was signed by the debtor on December 30, 1982.

9. The debtor testified that he withdrew the money from his Peoples Savings Bank accounts in order to finance the candy store business venture, which he opened in March of 1983 and closed in November of the same year.

10. The $15,000 loan application and supporting papers were submitted to Scarsdale's loan department at its main branch. Scarsdale's vice president in charge of the loan department testified that she would not have approved the $15,000 unsecured credit application submitted by the debtor if she knew that his wife, rather than the debtor, owned the $180,000 Innes Road home because his income and other assets did not justify the extension of the credit sought. The debtor's credit application was approved with the result that $7367.63 was applied to repay the debtor's existing obligation to Scarsdale and $7,632.37 was advanced to him in cash. Scarsdale's loan officer did not cause a title search to be made with respect to the Innes Road home because the debtor's loan application was for unsecured credit and the home was not being offered as collateral. Accordingly, she accepted the information listed on the debtor's financial statement as truthful representations. When the debtor filed his Chapter 13 petition, there was due to Scarsdale the sum of $13,336.49.

11. There is no question that the written information contained in the financial statement signed and submitted by the debtor to Scarsdale in support of his $15,000 credit application was materially false with respect to the debtor's financial condition. His assets did not include an interest in the Innes Road home, valued at $180,000. Therefore, the financial statement should have reflected a net worth of $24,900 rather than $182,900 as stated.

12. Scarsdale reasonably relied upon the information contained in the written financial statement signed by the debtor. There was no reason for Scarsdale to disbelieve the representation that the debtor owned the Innes Road home, valued at $180,000. No title search was necessary because the home was not offered as collateral for the credit extension; the loan was to be unsecured. The debtor relies on his testimony that six years previous, when he had submitted the $15,000 credit application he had been instructed by a Scarsdale credit representation to fill in a box captioned "owned" on a different credit form in connection with an earlier loan, notwithstanding the fact that he informed Scarsdale's credit representative that his wife owned the home. Even if such advice had been given to the debtor six years earlier, it was no justification for the debtor's listing the Innes Road home as an asset on the December 30, 1982 financial statement.

Manifestly, such listing was intended to deceive the plaintiff and, in fact, did deceive the plaintiff, to its detriment.

13. The debtor testified that he was unable to locate any financial books, documents or records with respect to his candy store business known as "It's Candy Time". He said that the cash receipts for the store were recorded on the cash register tapes which he furnished to his accountant in order to prepare his 1983 federal income tax return. The accountant did not testify at the trial. Schedule C of the joint federal income tax return filed by the debtor and his wife for 1983 with respect to "It's Candy Time" lists gross receipts of $14,445; cost of goods sold, $10,447; supplies, $1716; store equipment $2131 and a net loss of $6779. Exhibit 2 in evidence. The debtor could not locate the cash register tapes nor could he locate or produce any financial records with respect to the operation of the candy store. The debtor also could not locate or produce any of the savings bank passbooks listed on the financial statement that he submitted to Scarsdale on December 30, 1982 in connection with the $15,000 credit application. He testified that he last saw one of the savings bank passbooks in the glove compartment of his automobile, but that he could not now find it. The debtor also testified that he was unable to obtain any documents from the Peoples Savings Bank that would reflect the status of the two accounts in that bank.

14. The debtor testified that he sold the 200 shares of stock of Mathematical Applications, Inc. before he filed his Chapter 13 petition. However, he could not locate or produce the broker's sold slips reflecting this sale.

15. The only financial records that the debtor produced were nine invoices with respect to "It's Candy Time" and his 1982 and 1983 federal income tax returns which the debtor and his wife filed jointly. The 1982 federal income tax return lists interest income from the Peoples' Savings Bank in the sum of $6182.00. Exhibit 1 in evidence. The 1983 federal income tax return lists interest income from the East River Savings Bank (the successor to the Peoples Savings Bank) in the sum of $6291.00. The debtor testified that these accounts were owned by his wife. No further proof as to this point was adduced. Neither the debtor's wife nor his accountant was called to testify.

16. Items 2a, d and e in the debtor's Statement of Financial Affairs filed in this case, and the debtor's answers thereto read, as follows:

**2. Books and records.**

a. By whom or under whose supervision, have your books of account and records been kept during the 2 years immediately preceding the filing of the original petition herein? (Give names, addresses and period of time.)

2.a. Debtor's.

c. In whose possession are your books of account and records? (Give names and addresses).

c. Debtor.

d. If any of these books or records are not available, explain?

N/A.

e. Have any books of account or records relating to your affairs been destroyed, lost, or otherwise disposed of within the 2 years immediately preceding the filing of the original petition herein? (If so, give particulars, including date of destruction, loss, or disposition. [sic.] and reason therefore).

No.

17. Although the debtor's answers to items 2a, d, and e in his Statement of Affairs reflect that his books of account and records during the past two years are in his possession; are available; and have not been destroyed, lost or otherwise disposed of within two years immediately preceding the filing of his original bankruptcy petition, these answers are not factually correct. The debtor has failed to provide a justifiable explanation as to why he failed to keep or preserve any recorded information from which his financial condition or business transactions might be ascertained, as required under § 727(a)(3).

18. The debtor has failed to explain satisfactorily what happened to the money in his two bank accounts in the Peoples Savings Bank. Although he testified that he invested these funds in opening "It's Candy Time", the debtor offered no proof as to when these funds were withdrawn and how they were disbursed.

19. No business records were produced to support the debtor's contention that "It's Candy Time" was an unprofitable business, apart from the copy of the debtor's federal income tax return for 1983. Thus, the debtor has not satisfactorily explained his loss of assets or deficiency of assets to meet his liabilities.

## DISCUSSION

■ Scarsdale's objection to the dischargeability of the debtor's obligation arising under the $15,000 loan application on December 30, 1982 was pursued on behalf of Scarsdale alone. However, Scarsdale's objection to the debtor's discharge in bankruptcy inures to the benefit of all creditors in this case. The evidence amply reveals that the debtor obtained an extension or refinancing of credit from Scarsdale by use of a statement in writing, dated December 30, 1982, that was materially false respecting the debtor's financial condition. The statement listed a $180,000 home as an asset of the debtor, resulting in a net worth of $182,900, whereas the debtor did not own the home because he had previously transferred his interest to his wife. Scarsdale reasonably relied on this statement to its detriment when it approved the $15,000 loan. Scarsdale should not be faulted for believing that the debtor's statement of ownership was honest. *See Lincoln First Bank, N.A. v. Vairo (In re Vairo)*, 40 B.R. 776 at 781 (Bankr.S.D.N.Y.1984). Hence, the debtor's obligation to Scarsdale arising out of this loan in the current amount of $13,330.49, is not dischargeable in accordance with the exception to discharge specified in 11 U.S.C. § 523(a)(2)(B). However, the evidence in this case also reveals that there are sufficient grounds for denying the debtor's general discharge in bankruptcy.

## FAILURE TO PRESERVE RECORDS

Bankruptcy Rule 4005 provides that a party objecting to a debtor's discharge in bankruptcy "has the burden of proving his objection." Judge Pierce, in *In re Jacob P. Lefkowitz*, 4 B.C.D. 835, 836 (S.D.N.Y. 1978), *aff'd* 603 F.2d 213 (2d Cir.1979), *cert. den.* 444 U.S. 835, 100 S.Ct. 69, 62 L.Ed.2d 45 (1979), said of Bankruptcy Rule 407 (the predecessor to Bankruptcy Rule 4007):

> This rule does not change the initial burden which is placed upon the bankrupt of producing records from which his financial condition may be ascertained. *See* Advisory Committee's Note to Bankruptcy Rule 407; *In re Martin*, 554 F.2d 55, 58 (2d Cir.1977).

(footnote omitted).

The obligation to keep or preserve records reflecting a debtor's financial condition is imposed by 11 U.S.C. § 727(a)(3) which authorizes the denial of a bankruptcy discharge if:

> the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

In this case the debtor was engaged in two businesses, known as "Gun Hill Decorators" and "It's Candy Time". The objecting creditor, Scarsdale National Bank, advanced credit to the debtor with respect to "It's Candy Time" and, therefor, is concerned with the financial operations of that business. Scarsdale did not ask for the production of books and records with respect to the operations of "Gun Hill Decorators". The debtor claims that the books and records of "It's Candy Time" were located in the store and disappeared when many customers flooded the store during the close out sale held in the last two weeks of operations. The cash register

tapes that the debtor submitted to his accountant for the preparation of income tax returns were not produced. The debtor obtained credit from Scarsdale on the basis of a financial statement that reflected that he maintained two savings bank accounts totaling $17,900 and that he owned two hundred shares of the common stock of Mathematical Applications, Inc. However, he could not find or produce the two savings bank passbooks nor any broker's sold slips reflecting the sale of this stock. The objecting creditor, Scarsdale, is simply asked to take the debtor's word that he invested the savings account funds in opening up "It's Candy Time" and that he sold his shares of Mathematical Applications, Inc. The debtor offered no proof as to when he withdrew the funds from the savings accounts and into which account he deposited the money. In short, there was no way that Scarsdale could trace what happened to the funds and the stock. The 1983 federal income tax return which the debtor filed jointly with his wife reflects savings bank interest of $6291 for that year, although the debtor testified that he had invested his savings in "It's Candy Time". The debtor testified that the interest was earned by his wife from her own savings accounts. However, there was no credible proof to establish this point. The operations of "It's Candy Time" and the debtor's activities with respect to his savings bank remain a mystery.

■■ A court must be especially circumspect in dealing with a debtor's right to a discharge in bankruptcy because the relief afforded in bankruptcy cases was intended to permit an honest debtor to obtain a fresh start free from debt. Therefore, the objections to a discharge must be construed strictly against the objectant and liberally in favor of the debtor. *Bank of Pennsylvania v. Adlman (In re Adlman)*, 541 F.2d 999 (2d Cir.1976); *In re Kokoszka*, 479 F.2d 990, 996 (2d Cir.1973), *aff'd sub nom Kokoszka v. Belford*, 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 *reh. denied*, 419 U.S. 886, 95 S.Ct. 160, 42 L.Ed.2d 131 (1974); *In re Tabibian*, 289 F.2d 793, 795 (2d Cir.1961). Nonetheless, in order to obtain the blessings of a general discharge the debtor must reveal and not conceal his financial condition. As stated in *In re Silverman*, 10 B.R. 727, 731 (Bankr.S.D.N.Y. 1981): "Complete disclosure is the touchstone...." This point was emphasized in *In re Underhill*, 82 F.2d 258, 259–260 (2d Cir.1936), *cert. den.* 299 U.S. 546, 57 S.Ct. 9, 81 L.Ed. 402 (1936):

> Intent to conceal the financial condition is no longer a necessary element to support an objection to a discharge for failure to keep books. *Nix v. Sternberg*, 38 F.(2d) 611 (C.C.A.8), certiorari denied 282 U.S. 838, 51 S.Ct. 20, 75 L.Ed. 744; *In re Krulewitch*, 60 F.(2d) 1039 (D.C.N. J.). The law is not unqualified in imposing a requirement to keep books or records, and it does not require that if they are kept they shall be kept in any special form of accounts. It is a question in each instance of reasonableness in the particular circumstances. Complete disclosure is in every case a condition precedent to the granting of the discharge, and if such a disclosure is not possible without the keeping of books or records, then the absence of such amounts to that failure to which the act applies. *Nix v. Sternberg*, supra; *Karger v. Sandler*, 62 F.(2d) 80 (C.C.A.2); *In re Miller*, 5 F.Supp. 913 (D.C.Md.).

When a debtor fails to preserve or keep documentary evidence to explain the debtor's financial condition the creditors and the court need not be required to guess what actually occurred because such speculations do not serve as an adequate substitute for credible proof. *First Federated Life Insurance Co. v. Martin (In re Martin)*, 698 F.2d 883, 888 (7th Cir.1983).

■■ It is inconceivable that the debtor left his books and records for "It's Candy Time" at the business premises when he closed the business. Implicit in the duty to produce records reflecting his financial condition is the obligation to take reasonable precautions for the preservation of these records. *Federal Deposit Insurance Corp. v. Kottwitz (In re Kottwitz)*, 42 B.R.

566, 569 (Bankr.W.D.Mo.1984); *Frehm v. Harron (In re Harron)*, 31 B.R. 466, 470 (Bankr.D.Conn.1983); *Tucker v. Devine (In re Devine)*, 11 B.R. 487, 488 (Bankr.D. Mass.1981). The court cannot but reflect on the words of Judge Lavien that:

> I do not believe his testimony that he left the records when he abandoned the premises. This closing shop was not a sudden decision.

*Tucker v. Devine*, 11 B.R. at 489. In like fashion the court finds that the storing of savings bank passbooks in the glove compartment of an automobile and their subsequent disappearance, coupled with an unexplained inability to produce any documentary evidence to trace the movement of the funds in the savings accounts, defies credulity.

The objecting creditor has clearly established that the debtor has failed to preserve or keep adequate records to allow creditors to ascertain his financial condition. The debtor's failure to produce cash recorded information was not justified under all of the circumstances of this case.

## FAILURE TO EXPLAIN SATISFACTORILY THE LOSS OR DEFICIENCY OF ASSETS

■ A denial of a discharge is appropriate when a debtor fails to explain satisfactorily "any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5). Scarsdale extended credit to the debtor in early 1983 on the basis of a written financial statement that reflected that the debtor possessed, in addition to other assets, $17,900 in two savings accounts and 200 shares of the common stock of Mathematical Applications, Inc. The debtor maintains that the funds in the savings accounts were invested and lost in the business known as "It's Candy Time" and that the 200 shares of stock were sold. The debtor did not produce any credible evidence to support his story. It has long been the rule in the Second Circuit that a debtor's satisfactory explanation of a loss of assets or a deficiency of assets to meet the debtor's liabilities requires "much more

in the way of explanations than vague generalities." *Sperling v. Cudahy Packing Co. (In re Sperling)*, 72 F.2d 259, 261 (2d Cir.1934). A vague, indefinite, and uncorroborated hodge-podge of financial transactions will not suffice under 11 U.S.C. § 727(a)(5) for an adequate explanation of the loss or deficiency of assets. *First Federated Life Insurance v. Martin (In re Martin)*, 698 F.2d at 886; *Baum v. Earl Millkin, Inc. (In re Baum)*, 359 F.2d 811 (7th Cir.1966).

■ The debtor in this case has not satisfactorily accounted for the $17,900 that he admittedly maintained in two savings accounts in late 1982 and the two hundred shares of Mathematical Applications, Inc. As stated in *First Texas Savings Association, Inc. v. Reed (In re Reed)*, 11 B.R. 683, 688, 8 B.C.D. 31, 35 (Bankr.N.D.Tex.1981):

> Regardless of the amount of money which might pass through the hands or accounts, $19,586.83 is a significant sum of money for which an individual is unable to explain disposition.

The creditors in this case are entitled to know with assurance what happened to the money and the stock. They should not be required to take the debtor's word that he no longer has these assets. The failure to offer any documentary evidence to corroborate a debtor's testimony as to the loss or disposition of assets will justify the denial of a discharge pursuant to 11 U.S.C. § 727(a)(5). *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 620 (11th Cir.1984).

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject and the persons in this case in accordance with 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(J).

2. The plaintiff has sustained its burden of proof by clear and convincing evidence that its claim against the debtor is nondischargeable because the debtor obtained from the plaintiff an extension of credit by use of a statement in writing that was materially false respecting the debtor's financial condition on which the plaintiff rea-

sonably relied which was made with intent to deceive the plaintiff within the meaning of 11 U.S.C. § 523(a)(2)(B).

3. The plaintiff has sustained its burden of proof imposed under Bankruptcy Rule 4005 by clear and convincing evidence that the debtor failed to keep or preserve any recorded information, including books, documents, records and papers, from which the debtor's financial condition or business transactions must be ascertained, as required by 11 U.S.C. § 727(a)(3). The debtor has not justified such failure under all of the circumstances of this case.

4. The plaintiff has sustained its burden of proof imposed under Bankruptcy Rule 4005 by clear and convincing evidence that the debtor has failed to explain satisfactorily the loss of assets or deficiency of assets to meet his liabilities, as required under 11 U.S.C. § 727(a)(5).

5. The court will enter an order denying the debtor's discharge in bankruptcy.

SETTLE ORDER on notice.