In re Joseph L. DELANCEY, Debtor.

UNITED STATES FIDELITY &
GUARANTY, Plaintiff,

v.

Joseph L. DELANCEY, Defendant.

Bankruptcy No. 85 B 20100.
Adv. No. 85 ADV. 6053.

United States Bankruptcy Court,
S.D. New York.

March 12, 1986.

Morris Block, White Plains, N.Y., for U.S. Fidelity & Guar. Co.

Jeffrey L. Sapir, Hartsdale, N.Y., for Joseph L. DeLancey.

Barr and Faerber, Spring Valley, N.Y., for trustee; Elizabeth Hass, of counsel.

## DECISION ON OBJECTIONS TO DISCHARGE

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The United Fidelity & Casualty Company ("USF&G"), a $500,000 judgment creditor, and the trustee in bankruptcy of this estate, have joined in objecting to the granting of a discharge in bankruptcy to Joseph L. DeLancey, the debtor in this Chapter 7 case. The first count in both complaints alleges that the debtor's discharge should be denied pursuant to 11 U.S.C. § 727(a)(3)

of the Bankruptcy Code because the debtor failed to keep or preserve any recorded information from which his financial condition or business transactions might be ascertained. The second count in both complaints charges that the debtor has failed to explain satisfactorily any loss of assets or deficiency of assets to meet his liabilities, as required under 11 U.S.C. § 727(a)(5) of the Bankruptcy Code.

## FINDINGS OF FACT

1. On March 5, 1985, the debtor, Joseph L. DeLancey, filed with this court his voluntary petition in Bankruptcy pursuant to Chapter 7 of the Bankruptcy Code.

2. The debtor was a principal owner of a corporate roofing business known as Commercial Roofing, Inc. which is no longer in operation.

3. USF&G is a Maryland corporation authorized to engage in the insurance business, including the issuance of performance and payment bonds within the states of Pennsylvania and Maryland. USF&G, as surety, had issued performance and payment bonds on behalf of the debtor's corporation, Commercial Roofing, Inc. The debtor and his wife personally agreed to indemnify USF&G from any and all liabilities and losses which might be incurred by USF&G under the performance bonds issued by USF&G with respect to various contracts. USF&G sustained damages in excess of $500,000 as a result of having to complete the work for which Commercial Roofing, Inc. was responsible and which was covered by the performance and payment bond issued by USF&G.

4. On January 9, 1985, USF&G filed with the Clerk of Westchester County, New York, an authenticated copy of a judgment in its favor against the debtor that was entered on May 10, 1984, in the Court of Common Pleas of Perry County, Pennsylvania, in the sum of $500,000. The debtor's personal liability to USF&G in this amount is not disputed.

5. The trustee in bankruptcy and USF&G maintain that they are unable to confirm from the debtor's testimony and from the documents produced by him how he arrived at his present financial picture, as reflected in the figures in his schedules, which reveal debts amounting to $3,051,488.91 and assets consisting of $950.00 and a $46,000 claim. The debtor's financial background, and particularly his sudden acquisition of assets and his even faster loss of assets within a few years, raises some serious questions for the trustee in bankruptcy and USF&G as to what the debtor's current assets really are and what happened to those that he had.

6. On January 1, 1979, six years and two months prior to filing the present petition, the debtor filed a petition in bankruptcy in the United States District Court, Central District of California, Case No. Bk-00458-RM. He was granted a discharge on April 10, 1979.

7. In May of 1983, approximately four years after the debtor's first bankruptcy petition, he caused a statement of his financial condition as of February 1, 1983, to be prepared by a certified accounting firm in Harrisburg, Pennsylvania. Exhibit #2 in evidence. Apparently this statement was submitted for insurance purposes. The statement reflects that the debtor then had a net worth of $1,462,772.00, consisting of the following assets and liabilities:

### ASSETS

| | |
|---|---:|
| Cash | $ 8,241 |
| Note receivable (Note 2) | 85,039 |
| Investment in Commercial Roofing, Inc. (Note 3) | 21,943 |
| Machinery and equipment (Note 4) | 284,567 |
| Residence (Note 5) | 543,155 |
| Personal effects | |
|    Automobile (Note 6) | 15,000 |
|    Furnishings (Note 7) | 149,680 |

| | |
|---|---|
| Appliances and collections (Note 8) | $ 243,297 |
| Furs and jewelry (Note 9) | 269,695 |
| Mobile home (Note 10) | 10,000 |
| Total assets | $1,630,617 |

### LIABILITIES AND NET WORTH

| | |
|---|---|
| Notes and mortgage payable (Note 11) | $ 167,845 |
| Contingencies (Note 12) | |
| Net worth | $1,462,772 |
| Total liabilities and net worth | $1,630,617 |

8. The debtor also had most of his household personal property appraised by Linden Hall Antiques of Carlisle, Pennsylvania pursuant to a report dated February 10, 1983. Exhibit 4 in evidence (the "appraisal"). This report reflects an appraised value of $234,797.00, consisting of five classes of items as follows:

| | | |
|---|---|---|
| I | 77 Appliances-Household-Electronics-Pianos-Collections | $ 97,220.00 |
| II | 197 Clowns by Ron Lee | 18,723.00 |
| III | 466 Clowns | 36,849.00 |
| IV | Porcelains and Other Valuables | 62,735.00 |
| V | 36 Paintings | 19,270.00 |

9. According to the debtor's deposition he was not actively employed from 1978 through 1982. Exhibit # 6 in evidence. When asked what were his means of subsistence during this period, he replied: "I had reserves from the past." *id* at 7. As to Commercial Roofing Company's operations, the debtor stated: "Our company didn't perform any work until . . . April of 1983." *id* at 8. Commercial Roofing Company discontinued operations in March of 1984.

10. Evidently Commercial Roofing Company experienced financial problems shortly after it commenced doing business in April of 1983, because in June of 1983 the debtor testified that he began to dispose of personal property to raise money for his business and personal needs. He testified that he sold his Steinway piano, valued at $15,000, to a piano store in Baltimore, Maryland for $3,500. The debtor produced no receipt for this sale and could not say what he did with the money.

11. In July or August of 1983, the debtor testified that he arranged with a Mr. Rip Davis, who was employed by the Sands Casino in Atlantic City, New Jersey, to meet a prospective purchaser at the hotel who was willing to buy the furs and jewelry owned by the debtor and his wife, which were valued at $269,695 in the financial statement dated two to three months previous on May 10, 1983. Exhibit # 2 in evidence. The debtor testified that he met the purchaser in a room at the Sands Hotel. The debtor does not know the purchaser's name, nor does he have a receipt reflecting the sale. The debtor testified that he sold all the furs and jewels, except for a wrist watch and a wedding ring, for $47,000 in cash. The debtor testified that he did not deposit the $47,000 in cash in any bank account, business or personal, but that the money was used to pay business expenses. No records were produced to reflect the disposition of the $47,000.

12. On February 26, 1984, one year and one week before the debtor filed his Chapter 7 bankruptcy petition with this court (on March 5, 1985), the debtor sold household appliances, clown statues, porcelain items and paintings, which were valued in the appraisal in excess of $200,000, to an auctioneering firm in Pennsylvania. The debtor testified that he received $33,000 in cash for these items. He produced no records or documents to show what he did with the money. As in the case of $47,000 which he said that he received for the furs and jewelry, he did not deposit the $33,000 in any bank account when he received the cash.

13. The debtor produced a receipt from the auctioneer, dated February 16, 1984, which lists the items that were sold for .$33,000. Exhibit "A" in evidence.

706 Clown Statues
16 Cabinets containing clowns
5 other crystal cabinets
All clown paintings and prints
4 Pinball Machines
1 Area size oriental rug—all throw size orientals
1 Savin Copy Machine
2 Marble pedestals
Horse Prints
Grandfather clock
Island of overstuffed furniture
Table and 4 stack fitting stools
Desk in bedroom and Desk Chair—plus floor lamps
Sewing Machine in bedroom
Large screen television and video machine
Dining room table and captain ·chairs
Pr Recliners
Furniture as shown in basement
2 Pc Living room set and Etc.

Not included in the foregoing list are certain items· which were set forth in the February 10, 1983 appraisal, and for which no record of disposition was furnished, such as:

Frog Collection, 52 items, valued at $1250.00
2 Refrigerators
1 Washer, 1 Dryer, 7 Color TV sets and 1 large screen video projector
1 Carousel microwave stove
1 Chateau Magic Chef Stove and double oven
3 Electrolux Sweepers
12 Movie cabinets and 120 full length movies
Collection of Toys.
Lenox China Service for 12
Player Piano
Stoneware Service for 14

14. The debtor testified that the collection of toys, valued at $10,000 in the appraisal, were distributed by him to neighbors before he moved from Pennsylvania in February of 1984.

15. The debtor did not produce his federal income tax return for 1984 because he said that he had obtained an extension for filing and that the return had not yet been filed.

16. The debtor produced bank statements with respect to a checking account maintained by the debtor and his wife, with the Bank of New York, commencing with a transaction on April 4, 1984 and a balance of $2,432.06, and continuing through July 1, 1985 to a zero balance. Exhibit #1 in evidence. The debtor produced no bank records of any kind for the year 1983, when he says he disposed of nearly $500,000 worth of personal property for a total of approximately $83,500.

17. The debtor produced a copy of his check registry for checks written on the account with the Bank of New York from April 6, 1984 to the last check written on March 27, 1985 Exhibit "C" in evidence. He also produced copies of deposit tickets with respect to this account, commencing April 23, 1984 and ending on March 1, 1985. Exhibit "B" in evidence. These slips reflect the following nine cash deposits which total $23,000:

| 4/30/84 | — | $5000.00 |
| 5/22/84 | — | 6000.00 |
| 6/ 4/84 | — | 2000.00 |
| 6/26/84 | — | 2000.00 |
| 8/ 3/84 | — | 1500.00 |
| 8/ 7/84 | — | 500.00 |
| 8/16/84 | — | 500.00 |
| 8/23/84 | — | 5000.00 |
| 9/11/84 | — | 500.00 |

When questioned as to the source of the various cash deposits, the debtor testified that they probably came from the $33,000 he received in July or August of 1983 when he sold furs and jewelry at the Sands Hotel in Atlantic City, New Jersey. He said he used the cash that he received at the Sands Hotel for his family's personal needs and that he deposited the remaining funds as required for use. There was no documentary substantiation as to the source of these funds.

18. The debtor testified that throughout . his life he never kept detailed records as to

his personal transactions. He said that he always discarded his cancelled checks after he reconciled his monthly bank statements. However, he failed to explain or justify why he had no records to reflect the disposition of substantial amounts of personal property in 1983 or any documentation to explain what he did with the cash he said that he had received for the property. The check registry, bank statements and deposit slips which he did produce did not relate to 1983, the year in which the personal property dispositions occurred. Indeed, the deposit slips for the period after April 4, 1984 raise further questions, because no documentation was furnished to explain the source of the nine substantial cash deposits that were made.

## DISCUSSION

■ In support of the charge under 11 U.S.C. § 727(a)(3) that the debtor failed to keep or preserve any recorded information from which his financial condition might be ascertained, the brief for the debtor which was filed March 6, 1986 states at page 8:

It is no secret that the debtor filed a previous Chapter 7 petition in bankruptcy in California in 1979. The defendant's obligations were discharged during that proceeding. Both Mr. DeLancey and Mrs. Delancy testified that Mr. DeLancey has never kept a substantial amount of books and records for his personal dealings, although his business did maintain such records. Mrs. DeLancey testified that anything needed could always be obtained from the bank. And yet, his discharge was granted in 1979. Why then, should the defendant keep any further books or records when he has afforded the protection of the Bankruptcy Court without them? Certainly, this point alone, seems a justifiable circumstance for lacking books and records given this prior outcome.

This reasoning follows the familiar refrain in the popular World War II song: "We did it before and we can do it again." That the debtor succeeded in passing through bankruptcy without objection in 1979 is no rea-son why the same melody should linger on in this court.

### The Obligation to Keep or Preserve Records

■ Pursuant to Bankruptcy Rule 4005, the plaintiff has the burden of proving his objection to the debtor's discharge. This rule does not change the initial burden which is placed upon the debtor of producing records from which his financial condition may be ascertained. *Scarsdale National Bank and Trust Co. v. Switzer (In re Switzer)*, 55 B.R. 991 (Bankr.S.D.N.Y. 1986). In order to obtain a discharge in bankruptcy a debtor must satisfy the obligation imposed under 11 U.S.C. § 727(a)(3) to keep or preserve records reflecting the debtor's financial condition, unless the failure to keep such records was justified under all the circumstances of the case. While the ultimate burden of persuasion is placed upon the plaintiff, once the plaintiff has satisfied its burden of going forward with the evidence by showing that the debtor does not have sufficient records or documents from which the debtor's financial condition may be ascertained satisfactorily, the burden of producing additional credible evidence to rebut the proof of insufficient records, or to justify the absence of records, shifts to the debtor. *First Texas Savings Association, Inc. v. Reed (In re Reed)*, 700 F.2d 986, 992 (5th Cir.1983); *First Federated Life Insurance Co. v. Martin (In re Martin)*, 698 F.2d 883, 887 (7th Cir.1983). In reviewing the evidence, a court must be sensitive to the debtor's opportunity for a discharge so as to permit an honest debtor to obtain a fresh start free from debt. Therefore, the objections to a discharge must be construed strictly against the plaintiff and liberally in favor of the debtor. *Bank of Pennsylvania v. Adlman (In re Adlman)*, 541 F.2d 999 (2d Cir.1976); *In re Kokoszka*, 479 F.2d 990, 996 (2d Cir.1973), *aff'd sub nom Kokoszka v. Belford*, 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 *reh. denied* 419 U.S. 886, 95 S.Ct. 160, 42 L.Ed.2d 131 (1974); *In re Tabibian*, 289 F.2d 793, 795 (2d Cir.1961).

■ In reviewing an objection to a discharge based on the debtor's obligation to keep books or records that will explain the debtor's financial condition the court must be mindful of the debtor's obligation in a bankruptcy case to reveal, rather than conceal, the complete financial picture. "Complete disclosure is the touchstone, ..." *In re Silverman*, 10 B.R. 727, 731 (Bankr.S.D. N.Y.1981). A debtor is not required to keep books or records in any particular form, nor do the creditors have to establish an intent to conceal the financial condition, as long as complete disclosure is made so that the creditors are not required to guess at what actually occurred. *First Federated Life Insurance Co. v. Martin (In re Martin )*, 698 F.2d at 888; *In re Halpern*, 387 F.2d 312, 315 (2d Cir.1968); *In re Underhill*, 82 F.2d 258, 259–260 (2d Cir.1936), *cert. den.* 299 U.S. 546, 57 S.Ct. 9, 81 L.Ed. 402 (1936); *In re Switzer*, 55 B.R. at 997. What records should be kept will necessarily depend upon the circumstances in each case.

If they were such that others in like circumstances would ordinarily keep financial records he must show more than that he did not comprehend the need for them and must carry his explanation by way of justification to the point where it reasonably appears that because of unusual circumstances he was under no duty to keep them.

*In re Sandow*, 151 F.2d 807, 809 (2nd Cir. 1945).

■ In this case the trustee in bankruptcy and USF&G are entitled to know from the debtor's records the sources of the debtor's assets and where those assets went. In January of 1979 the debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code with the bankruptcy court in the Central District of California and received a discharge in bankruptcy on April 10, 1979. He previously testified in a deposition taken on December 4, 1984 that he was not actively employed from 1978 until 1982, and when asked what were his means of subsistence or how did he live during that period, he said "I had reserves from the past." Exhibit # 6 in evidence at

p. 7. In May of 1983, the debtor submitted a financial statement prepared by an accounting firm reflecting the fact that he had a net worth in excess of $1,462,000, including furs and jewelry valued at $269,-695 and appliances and collections valued at $243,297. The debtor testified that he sold furs and jewelry for $47,000 in cash at the Sands Casino in Atlantic City, New Jersey, and that he has no records to support this disposition. He testified that he disposed of most of his appliances and art collections to an auctioneer in Philadelphia, Pennsylvania for $33,000 in cash. The receipt he obtained from the auctioneer omits many appliances and items that were listed in the debtor's May, 1983 financial statement. Thus, there is no record or receipt supporting the disposition of the furs and jewelry or the whereabouts of valuable appliances not listed on the auctioneer's receipt. The $33,000 and $47,000 in cash that the debtor received were curiously not deposited in a bank account. Thus, the creditors have no way of tracing the disposition of these funds. The bank statements and check registry that the debtor did produce relate to the period from April of 1984 to March of 1985, more than one year after the debtor sold the furs and jewelry for $33,000. Nine such cash deposits in the debtor's checking account ranging between $6000 to $500 from April, 1984 through September, 1984 totalling some $23,000 are undocumented as to the source of the funds. Obviously, the trustee and creditors in this case are entitled to know what "reserves from the past" may exist for the debtor's benefit after this bankruptcy case.

The debtor's failure to produce records to show what he did with the cash he received from the sale of furs and jewels valued at $269,695 and the sale of appliances and art items valued in excess of $200,000 is not excused merely because he claims not to have maintained much in the way of personal records. Certainly a sophisticated business man who has already gone through one bankruptcy filing should be aware that his creditors expect more than vague and generalized testimony

about the sale of assets. *Savannah Valley Carpets v. Ellison (In re Ellison )*, 34 B.R. 120, 124 (Bankr.M.D.Ga.1983); *Lissack Enterprises, Inc. v. Braidis (In re Braidis )*, 27 B.R. 470, 473 (Bankr.E.D.Pa. 1983); *Wendel v. Sharpe (In re Sharpe )*, 16 B.R. 226, 228 (Bankr.S.D.Fla.1981); *Tucker v. Devine (In re Devine )*, 11 B.R. 487, 489 (Bankr.D.Mass.1981).

> Having been legally obligated to keep some meaningful record as to his personal affairs, which were extensive and involved large amounts of cash, the bankrupt's discharge must be denied by his own admission that: "I just never kept them" and "I did not destroy the records—I merely did not bother to keep them."

*In re Silverman,* 10 B.R. at 732.

■ The production of records to explain the disposition of substantial assets is a prerequisite to a debtor's relief from having to repay his creditors. *Scarsdale National Bank and Trust Company v. Switzer (In re Switzer )*, 55 B.R. at 997; *Tucker v. Devine (In re Devine )*, 11 B.R. at 489. Hence, USF&G and the trustee in bankruptcy have established that the debtor has failed to preserve or keep adequate records to allow creditors to ascertain his financial condition. The debtor's failure to produce such recorded information was not justified in the circumstances of this case.

### Failure to Explain Satisfactorily The Loss Or Deficiency of Assets

■ A debtor's discharge in bankruptcy will be denied pursuant to 11 U.S.C. § 727(a)(5) if the debtor fails to explain satisfactorily "any loss of assets or deficiency of assets to meet the debtor's liabilities." The debtor testified that he disposed of furs, jewelry, appliances, a Steinway piano and art works valued over $400,000 for cash payments of $47,000, $33,000 and $3,500. However, he has not satisfactorily documented the disposition of these assets nor has he explained satisfactorily what happened to the $83,500 he received in exchange. A debtor's satisfactory explanation of a loss of assets or a deficiency of

assets to meet the debtor's liabilities requires "much more in the way of explanations than vague generalities." *Sperling v. Cudahy Packing Co. (In re Sperling )*, 72 F.2d 259, 261 (2d Cir.1934); *Federal Deposit Insurance Corporation v. Hendren (In re Hendren )*, 51 B.R. 781, 786–789 (Bankr.E.D.Tenn.1985) (the explanation must be reasonable and satisfy the court that the creditors have no cause to wonder where the assets went). The failure to offer any documentary evidence to corroborate a debtor's testimony as to the loss or disposition of assets will justify the denial of a discharge pursuant to 11 U.S.C. § 727(a)(5). *Chalik v. Moorefield (In re Chalik )*, 748 F.2d 616, 620 (11th Cir.1984); *Scarsdale National Bank & Trust Company v. Switzer (In re Switzer )*, 55 B.R. at 998. Moreover, a vague, indefinite and uncorroborated hodge-podge of financial transactions will not suffice under 11 U.S.C. § 727(a)(5) for an adequate explanation of the loss or deficiency of assets. *First Federated Life Insurance v. Martin (In re Martin )*, 698 F.2d at 886; *Baum v. Earl Millkin, Inc. (In re Baum )*, 359 F.2d 811 (7th Cir.1966); *Lissack Enterprises, Inc. v. Braidis (In re Braidis )*, 27 B.R. at 474. As stated in *First Texas Savings Association, Inc. v. Reed (In re Reed )*, 11 B.R. 683, 688 (Bankr.N.D.Texas 1981) *aff'd* 700 F.2d 986 (5th Cir.1983):

> Regardless of the amount of money which might pass through the hands or accounts, $19,586.83 is a significant sum of money for which an individual is unable to explain disposition.

The creditors in this case are entitled to know what happened to the personal property and the $83,500 allegedly received in exchange. They should not be required to take the debtor's word that he no longer has the property or the cash. The debtor's failure to offer any documentary corroboration as to the loss or disposition of these assets requires the denial of his discharge pursuant to 11 U.S.C. § 727(a)(5).

### CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the persons in this case in

accordance with 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(J).

2. The plaintiffs have sustained their burden of proof imposed under Bankruptcy Rule 4005 by clear and convincing evidence that the debtor failed to keep or preserve books, documents, records and papers, from which the debtor's financial condition might be ascertained, as required by 11 U.S.C. § 727(a)(3). The debtor has not justified such failure under all of the circumstances of this case.

3. The plaintiffs have sustained their burden of proof imposed under Bankruptcy Rule 4005 by clear and convincing evidence that the debtor has failed to explain satisfactorily the loss of assets or deficiency of assets under 11 U.S.C. § 727(a)(5).

4. The court will enter an order denying the debtor's discharge in bankruptcy.

SETTLE ORDER on notice.