**In the Matter of Ramji
D. SETHI, Debtor.**

**State Bank of India, New York Branch
and Richard J. McCord, Chapter 7
Trustee, Plaintiffs,**

v.

**Ramji D. Sethi, Defendant.**

**No. 98–26126–608.**

United States Bankruptcy Court,
E.D. New York.

July 13, 2000.

Richard J. McCord, East Meadow, NY, for Plaintiff and Chapter 7 Trustee.

Foreht, Last, Landau & Katz, New York City, for State Bank of India, New York Branch.

Certilman Balin Adler & Hyman, East Meadow, NY, for Richard J. McCord, Chapter 7 Trustee.

Dennis J. O'Sullivan, Flushing, NY, for Defendant.

## MEMORANDUM DECISION

CARLA E. CRAIG, Bankruptcy Judge.

This matter comes before the Court on the motion of plaintiff, State Bank of India, New York Branch ("SBI") for summary judgment pursuant to Fed. R. Bankr.P. 7056 denying a discharge to defendant, debtor Ramji D. Sethi, under 11 U.S.C. §§ 727(a)(3) and 727(a)(5). For the reasons set forth in this Memorandum Decision, that motion is granted.

### *Jurisdiction*

This Court has jurisdiction of this core proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(2)(J) and the Eastern District of New York standing order of reference dated August 28, 1986.

### *Standard for Summary Judgment*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Bankr.P. 7056(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court's function is not to resolve disputed issues of fact, but only to determine whether there is a genuine issue to be tried. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). No genuine issue exists "unless there is sufficient evidence favoring the

nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. 2505. In making this determination, the court is required to view the evidence in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). When no rational trier of fact could find in favor of the non-moving party because the evidence to support its case is so slight, there is no genuine issue of material fact requiring a trial and a grant of summary judgment is proper. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 280, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968).

### Factual Background

The following is a summary of the relevant facts and of the plaintiff's contentions with regard to the legal consequences of the facts. In this summary, the facts described are not in dispute, except as otherwise indicated.

The debtor filed this voluntary chapter 7 case on November 15, 1998. In the debtor's schedules, he lists $350 in total assets and $2,024,884.08 in liabilities. Included in the debtor's schedule of unsecured claims are 7 claims, totalling $100,370.33, which are identified by the debtor as "consumer debt." According to the petition, all but $11,000 of this consumer debt was incurred after 1993, and at least $30,000 was incurred in 1996 or later.

SBI is the debtor's largest creditor. Its claim, which is in excess of $1,890,000, arises from the debtor's personal guarantee of a loan made by SBI in 1988 to a corporation controlled by the debtor. In connection with the application for that loan, the debtor submitted to SBI a personal financial statement dated November 25, 1986 showing a net worth of $810,032.00.

In response to discovery requests made pursuant to Fed. R. Bankr.P.2004, the debtor produced copies of his federal tax returns for 1993, 1994, 1995 and 1996, and W–2 forms for 1997 and 1998. At his deposition on February 18, 1999, debtor testified that he has no other financial documents or records for the period prior to the commencement of this case. Sethi Dep., p. 9.*

SBI argues that the debtor's discharge should be denied under 11 U.S.C. § 727(a)(3), on the grounds that the debtor has failed to provide records from which his financial condition or business transactions may be ascertained. SBI also contends that the debtor's discharge should be denied under 11 U.S.C. § 727(a)(5), on the grounds that the debtor has failed to explain satisfactorily the loss or deficiency of assets to meet his liabilities.

In making these arguments, SBI points to certain assets which the debtor owned at one time, and which are not listed on the debtor's petition. SBI contends that insufficient documentation has been produced under § 727(a)(3) concerning these assets and their disposition, and further contends that the loss of these assets has not been satisfactorily explained under § 727(a)(5). The following is a list of the assets in question and a summary of any documentation or explanation offered by the debtor with regard to those assets and their disposition.

1. *Condominium located at 41–40 Union Street, Flushing, NY*

This asset is listed on the 1986 financial statement provided by the debtor to SBI. The debtor testified at his deposition that this property, which was rented, was sold to the tenant in 1987, and

* References to "Sethi Aff." are to the Affidavit of Ramji D. Sethi, sworn to March 20, 2000; references to "Sethi Supp. Aff." are to the Supplemental Affidavit of Ramji D. Sethi, sworn to March 29, 2000; and references to "Sethi Dep." are to the Deposition of Ramji D. Sethi taken on February 18, 1999.

admits that he has no records of this transfer (Sethi Dep., pp. 65, 68), but states that the purchaser, who "probably" still resides there, and who debtor alleges was an employee of SBI, should have records of the transaction. Sethi Aff., ¶ 6.

### 2. *Two–Family House Located at 35–16 101st Street, Corona, N.Y.*

The debtor testified at his deposition that he owned a two-family house at this address, which he acquired in "'84 or '5, maybe' ", and that the house was foreclosed on. Sethi Dep., p. 70. There was no testimony as to the date of the foreclosure, but the debtor testified that the tenants occupying the house "were not paying any rent" and that he stopped paying the mortgage on the house "[l]ate '87 I think, or '88." The foreclosing bank is identified by the debtor only as "some California bank." Sethi Dep., pp. 70–71. The debtor admits he has no records of this transfer, but states that the records of the foreclosure should be available at the Queens County Clerk's office. Sethi Aff., ¶ 7.

### 3. *House Located at 30–30 Parsons Blvd., Flushing, N.Y.*

This asset is also listed on the debtor's 1986 financial statement. Debtor testified that this house was sold in 1995 for some unspecified amount between $250,000 and $400,000. Sethi Dep., pp. 56–60. The debtor has produced no records of this transfer, but states that "[t]he attorney who represented me at the closing was Mr. Durso of Queens County, New York, an attorney who can be easily traced by movants. . . . To the best of my knowledge, Mr. Durso still has all of the relevant documents relating to that sale. Mr. Durso was my agent and preserved all relevant documents in this transaction as such." Sethi Aff., ¶ 5. Debtor also testified at his deposition that the purchaser of this house was his niece's husband and that

the debtor and his wife continued to live at that house from time to time after it was sold, and to use it as their mailing address. Sethi Dep., pp. 58–60.

### 4. *U.S. Government Bonds Owned by Debtor Held at Barclays Bank, Certificate of Deposit Owned by Debtor Held at Wells Fargo Bank.*

These assets are listed on the debtor's 1986 financial statement as having a value of $40,000. The debtor states that "[f]rom 1994 through 1997 I gradually redeemed these bonds over a four-year period in order to pay for medical expenses." Sethi Aff., ¶ 9. Although the debtor produced no records of the redemption of these bonds or the disposition of the proceeds, he states that "[t]he records regarding these transactions are kept by Barclays Bank and Wells Fargo Bank, as well as the doctors who provided the medical service." *Id.* Nowhere in the record are these doctors named.

### 5. *Dental Practice Located at 136–80 Roosevelt Ave., Flushing, N.Y.*

The debtor engaged in the practice of dentistry at this location from 1980 to 1992. SBI contends that the debtor transferred this practice to his daughter-in-law in 1992, without receiving any consideration. The debtor states that, although his dental practice grossed $12,000 per month, it was a "one-man operation"; that it was "dwindling" due to his declining health; that his daughter-in-law was developing a separate pediatric dental practice at the same location; and that when he stopped practicing in 1992, "[t]here was never any material transfer of patient lists, equipment, hardware, or receivables to my daughter-in-law," who took over the lease, and continued to practice dentistry at that location under the name "Sethi Family Group." Sethi Aff., ¶ 4. Although the debtor states that he stopped working in 1992, his 1993 fed-

eral tax return shows $61,000 in gross receipts from the practice of dentistry. No records of any dental practice were produced.

### 6. Dental Practice Located at 201 East 28th Street, New York, N.Y.

Debtor had another dental practice at this location from 1986 to 1990. According to the debtor, all property and documents relating to that practice were at that location and were seized by the Sheriff due to non-payment of rent and are therefore no longer in the debtor's possession. Sethi Aff., ¶ 8.

### 7. $80,000 Transferred to Sangeetha Sethi in 1994 and 1995.

Debtor's 1994 and 1995 tax returns show business income of $32,197 and $46,649, respectively, and state that such income was "returned to Sangeetha Sethi [the debtor's daughter-in-law]under contract." No documentation regarding this transfer was produced. In his final reply affidavit the debtor explained that starting in 1993, due to his declining health, his daughter-in-law "graciously agreed" to treat his dental patients, because he could no longer do so, and that the amounts in question represent amounts billed by her under his name to insurance companies for dental work performed by her, and for that reason those amounts were transferred to her. Sethi Supp. Aff., ¶ 10. This explanation is inconsistent with the debtor's contention that he did not transfer his dental practice to his daughter-in-law, but that she simply developed an independent dental practice at the same location. No records of these billings were produced, or of the transfer of these monies to debtor's daughter-in-law, except for the tax returns.

### 8. Consumer Debt

Although the debtor's petition listed approximately $100,000 in consumer debt, of which at least $30,000 was less than 2 years old at the time the petition was filed, no explanation is provided of what was purchased by the debtor, or why the debtor has nothing to show for this debt. Although debtor testified at his deposition that he believes that these debts were in fact incurred prior to the dates on which the petition states that they were incurred (Sethi Dep., p. 79), no bills or other records were produced that would enable the Trustee or SBI to determine when these debts were incurred or for what purpose.

### Standard for Denial of Discharge Under § 727(a)(3)

Section 727(a)(3) of the Bankruptcy Code states that:

(a) The court shall grant the debtor a discharge, unless—

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

The fundamental policy underlying § 727(a)(3) is to insure that the trustee and the creditors receive sufficient information to enable them to trace the debtor's financial history, to ascertain the debtor's financial condition, and to reconstruct the debtor's business transactions. *Krohn v. Frommann (In re Frommann)*, 153 B.R. 113, 116 (Bankr.E.D.N.Y.1993); *accord, Thaler v. Erdheim (In re Erdheim)*, 197 B.R. 23, 29 (Bankr.E.D.N.Y.1996); *Bay View Laundry, Inc. v. Artura (In re Artura)*, 165 B.R. 12, 15 (Bankr.E.D.N.Y. 1994). An intent to conceal one's financial information is not necessary to support a denial of discharge under § 727(a)(3). *In re Underhill*, 82 F.2d 258, 259 (2d Cir. 1936), *cert. denied*, 299 U.S. 546, 57 S.Ct. 9, 81 L.Ed. 402 (1936); *Frommann*, 153

B.R. at 116; *In re Pimpinella*, 133 B.R. 694, 697 (Bankr.E.D.N.Y.1991).

The party objecting to discharge has the burden of proof to show that the debtor has failed to keep and maintain adequate books and records, and that such failure renders it impossible to discern the debtor's true financial condition and identify material business transactions. *Krohn v. Cromer (In re Cromer)*, 214 B.R. 86, 98 (Bankr.E.D.N.Y.1997). The standard for evaluating the adequacy of a debtor's record keeping enunciated by the Second Circuit in *Underhill* is applicable today:

> [T]he law...does not require that [the debtor's books and records]... be kept in any special form of accounts. It is a question in each instance of reasonableness in the particular circumstances. Complete disclosure is in every case a condition precedent to the granting of a discharge, and if such disclosure is not possible, without the keeping of books or records, then the absence of such amounts to that failure to which the act applies.

82 F.2d at 259–60.

Hence, the debtor is not required to keep an impeccable system of bookkeeping or records so complete that he can satisfy an expert in business. *In the Matter of John A. Esposito*, 44 B.R. 817, 826–27 (Bankr.S.D.N.Y.1984). Rather, the test is whether there is available written evidence made and preserved from which the debtor's present financial condition, and his recent business transactions for a reasonable period in the past, may be ascertained with substantial completeness and accuracy. *Id.; Barristers Abstract Corp. v. Caulfield (In re Caulfield)*, 192 B.R. 808, 823 (Bankr.E.D.N.Y.1996).

It is up to the bankruptcy court's broad discretion to determine on a case by case basis whether the records produced by the debtor are sufficient. *Frommann*, 153 B.R. at 117. In reviewing an objection to a discharge based on the debtor's failure to keep books or records from which the debtor's financial condition may be ascertained, the court must be mindful of the debtor's obligation in a bankruptcy case to reveal, rather than conceal, the complete financial picture. *Erdheim*, 197 B.R. at 29. When examining the debtor's circumstances, courts have focused on factors including the following:

1. Whether the debtor was engaged in business, and if so, the complexity and volume of the business;

2. The amount of the debtor's obligations;

3. Whether the debtor's failure to keep or preserve books and records was due to the debtor's fault;

4. The debtor's education, business experience and sophistication;

5. The customary business practices for record keeping in the debtor's type of business;

6. The degree of accuracy disclosed by the debtor's existing books and records;

7. The extent of any egregious conduct on the debtor's part; and

8. The debtor's courtroom demeanor.

*Frommann*, 153 B.R. at 117.

Although the plaintiff has the burden of proving the inadequacy of the debtor's records, it is the debtor who has the obligation of producing financial records in the first place from which the debtor's financial condition may be ascertained. *Nisselson v. Wolfson (In re Wolfson)*, 139 B.R. 279, 286 (Bankr.S.D.N.Y.1992), *aff'd Nisselson v. Wolfson (In re Wolfson)*, 152 B.R. 830 (S.D.N.Y.1993). "The creditors and the court need not be required to guess what actually occurred because such speculations do not serve as an adequate substitute for credible proof." *State Bank of India, New York Branch v. Chachra (In re Chachra)*, 138 B.R. 397, 401 (Bankr. S.D.N.Y.1992).

Once the court determines that the records produced by the debtor are insufficient to enable the court, the trustee

or the creditors to determine the debtor's financial affairs and business transactions, the burden shifts to the debtor to justify any deficiencies. *Wolfson,* 139 B.R. at 285. The debtor must show that the inadequate business records were justified under the circumstances. *Id.* at 286. The explanation of loss must be more than just vague and general oral assertions that assets or records are no longer available. *Adams v. Joseph (In re Joseph),* No. 91–CV–1114, 1992 WL 96324, at *3 (N.D.N.Y. Apr. 22, 1992). "Moreover, the debtor may not, by oral testimony, supplement that information which is absent from the actual records." *Pimpinella,* 133 B.R. at 698, *citing Underhill,* 82 F.2d at 260.

■■■■■ Debtors have a duty to preserve those records that others in like circumstances would ordinarily keep. *Caulfield,* 192 B.R. at 823. Hence, the debtor's honest belief that he does not need to keep the records in question, or that his records are sufficient, or his statement that it is not his practice to keep additional records, does not constitute justification for failure to keep or preserve records under § 727(a)(3). *Pimpinella,* 133 B.R. at 698. "If the debtor's transactions were such that others in like circumstances would ordinarily keep financial records, then [the debtor] must show more than that '[he] did not comprehend the need for them and must carry [his] explanation by way of justification to the point where it appears that because of unusual circumstances [he] was under no duty to keep them.'" *Frommann,* 153 B.R. 113, 117, *citing In re Sandow,* 151 F.2d 807, 809 (2d Cir.1945).

■■■■■ In short, whether the debtor's failure to keep records was justified must be determined in light of all the circumstances of the case. *Cromer,* 214 B.R. at 99. The court should consider the debtor's education, experience, the sophistication of the debtor's business, the debtor's personal financial structure, and any special circumstances that may exist. *Id.; Caulfield,* 192 B.R. at 823. A sophisticated debtor is generally held to a higher level of accountability in record keeping, and the more complex the debtor's financial situation, the more numerous and detailed the debtor's financial records should be. *Id.*

### Application of Law to Facts

■■■■ Because the underlying purpose of the Bankruptcy Code is to grant the honest debtor a "fresh start," objections to discharge must be strictly construed against the objector and in favor of the debtor. *Pimpinella,* 133 B.R. at 697; *Schultz v. Shapiro (In re Shapiro),* 59 B.R. 844, 847 (Bankr.E.D.N.Y.1986). When denial of discharge is sought on a motion for summary judgment, courts exercise even greater caution. *Chachra,* 138 B.R. at 401.

■■■■ Even under this strict standard, it is apparent from the record on this motion for summary judgment that the debtor's discharge must be denied under § 727(a)(3) of the Bankruptcy Code. It is undisputed that the only records that the debtor has produced relating to his pre-petition financial affairs are federal tax returns for the years 1993, 1994, 1995 and 1996, and a W–2 form for 1997. These records are wholly insufficient for the Trustee or a creditor to ascertain the debtor's financial condition or pre-petition business transactions. In addition, these records provide no assistance in understanding what happened to the debtor's assets, or how the proceeds of those assets were disposed of.

Application of the eight factors enumerated in *Frommann* buttresses the conclusion that the debtor has not produced sufficient records. *Frommann,* 153 B.R. at 117. Here, the debtor was plainly engaged in business pre-petition; he had two dental practices and owned three parcels of real property, two of which were rental properties. The total obligations which the debtor seeks to discharge in this no-asset case are very substantial in amount—in excess of $2,000,000. With respect to whether the lack of records is due

to the debtor's fault, the debtor has not alleged that the records of his dental practices, of his real property dispositions, of his liquidation of $40,000 in bonds, or of his credit card purchases, were destroyed or lost due to some event beyond his control, such as fire or theft, and the justifications he does offer will be examined later in this opinion. As to the fourth factor, the debtor is educated: he is a dentist, and therefore has a post-graduate degree. He also has business experience, as shown by the fact that he operated two dental practices and owned rental property. With respect to the fifth factor, while there is no evidence in the record as to the customary practices for record keeping in the practice of dentistry, or with respect to real estate ownership, here the debtor has produced no records whatsoever relating to these activities. With regard to the degree of accuracy disclosed by the debtor's existing books and records, it is impossible to determine whether the tax returns that debtor produced are accurate, because none of the underlying financial records were produced. For all these reasons, even in the absence of an assessment of the debtor's courtroom demeanor, or a finding that he engaged in egregious conduct, this Court concludes that this debtor has failed to keep or preserve sufficient recorded information from which the debtor's financial condition or business transactions might be ascertained.

 At this point, the burden shifts to the debtor to justify the deficiencies in his record keeping. The principal justification offered by the debtor for his lack of records is that many of the records in question relate to periods which pre-date the commencement of this bankruptcy case by more than "the six year inquiry period

bankruptcy courts traditionally employ to track property transfers pursuant to New York State law." Sethi Aff., ¶ 7. Assuming that the debtor's testimony is true, as the Court must on a summary judgment motion, the sale of the condominium on Union Street took place in 1987 (11 years prior to the commencement of this case); the foreclosure of the two-family house in Corona, N.Y. took place in or about 1989 (9 years prior to the commencement of this case); the Sheriff's seizure of the assets of the dental practice in Manhattan took place in 1990 (8 years prior to the commencement of this case); and the abandonment, or transfer, of the Queens dental practice took place in 1992 (6 years prior to the commencement of this case). Thus, the debtor in effect argues that these records are so stale that he cannot reasonably be expected to have preserved them through the time he commenced this bankruptcy case, and that these records are in any event not relevant to the Trustee's examination of his business affairs, because they relate to transactions for which the statute of limitations has expired, at least with respect to any potential fraudulent conveyance action.* *Cf. Caulfield,* 192 B.R. at 825 (finding that there was sufficient justification for a lack of records under 727(a)(3) where "the discarded documents relate to transactions which occurred many years before the filing and the creditor has not shown that the lack of documents made it difficult to ascertain the Debtor's financial condition").

Even if the Court accepts this argument, however, the undisputed record in this case shows that a number of more recent transactions occurred, about which there is likewise no documentation. In particular, according to the debtor's deposition testimony, the house located at 30–30 Parsons

---

* Under 11 U.S.C. § 544 of the Bankruptcy Code, the Trustee steps into the shoes of any creditor with an unsecured claim against the debtor as of the petition date, and is entitled to assert any claim that such creditor would have under state law, including a claim under N.Y. Debt. & Cred. Law §§ 270–81 (McKinney 1990), New York's Uniform Fraudulent Conveyance Act (UFCA). Under N.Y. C.P.L.R. 213 (McKinney 1990), the statute of limitations for commencement of such an action is six years, subject to tolling under certain circumstances, and by operation of 11 U.S.C. § 108(a) of the Bankruptcy Code, that period is further extended for the Trustee until two years after the order for relief.

Blvd., Flushing, New York, was sold in 1995 (three years prior to the commencement of this case) for an amount somewhere between $250,000 and $400,000, which estimate the debtor later revised to "approximately $300,000." Sethi Dep., pp. 56–60; Sethi Aff., ¶ 5. Although the debtor asserts that the "bulk" of the sale proceeds were paid to a first and second mortgagee (Sethi Aff., ¶ 5), no records of these mortgages or of the payment of the sales proceeds to the mortgagees have been produced. Indeed, no records whatsoever have been produced by the debtor of the sale or the disposition of the proceeds. Concern about this transaction, and the need for full disclosure of its terms, and for disclosure regarding the disposition of the proceeds, is heightened because the debtor admits he sold the house to a relative and continued to live there, at least from time to time, and to use the house as his mailing address. Sethi Dep., pp. 59–60. These are indicia of a potential fraudulent conveyance that give rise to a need for heightened scrutiny of the transaction. *See ACLI Gov't Securities, Inc. v. Rhoades,* 653 F.Supp. 1388, 1395 (S.D.N.Y. 1987); *Gray v. Fill (In re Fill),* 82 B.R. 200, 220 (Bankr.S.D.N.Y.1987) (noting that factors from which fraudulent intent may be inferred include "a close relationship among the parties to the transaction"); *EFA Acceptance Corp. v. Cadarette (In re Cadarette),* 601 F.2d 648, 651 (2d Cir.1979) ("The retention of the use of transferred property very strongly indicates a fraudulent motive underlying the transfer.").

■ The debtor seeks to justify his failure to produce any records of this transaction by asserting that "Mr. Durso of Queens County, New York," his attorney in connection with the sale, "[t]o the best of my knowledge ... has all of the relevant documents relating to that sale," and that SBI has not made any efforts to secure these documents from Mr. Durso. This attempted justification must fail. Even if the debtor had supplied the full name and current address of the attorney who represented him in the sale of the 30–30 Parsons Blvd. property, rather than the sketchy and incomplete identification offered in his affidavit, it is the debtor who has the burden of producing records from which his financial condition may be ascertained. *Wolfson,* 139 B.R. at 286. He cannot shift that burden onto SBI.

In addition, the debtor has failed to produce any records relating to the $40,000 in U.S. Government bonds which he says he redeemed between 1994 and 1997, or any records relating to the disposition of the proceeds of those bonds. Here, too, the debtor cannot justify this admitted lack of records by arguing that SBI should seek those records from the bank or banks which held the bonds (which have not been identified by address, and for which the debtor has not provided he name of any contact person or account number), or from the unnamed physicians who the debtor says were paid with the proceeds. The obligation to provide adequate records of these transactions lies with the debtor. Here, no records have been provided.

The debtor also produced no records concerning the approximately $100,000 in consumer debt listed on his petition, with the result that neither the Trustee nor SBI can ascertain precisely when those debts were incurred, what was purchased, and whether any assets were acquired by the debtor that could potentially be traced and recovered by the Trustee. Likewise, the debtor has produced no records relating to the transfer of $80,000 in 1994 and 1995 to his daughter-in-law that is reported on his tax returns for those years, with the result that the Trustee and SBI are entirely unable to verify the debtor's explanation of this transaction. This is exactly the type of situation that § 727(a)(3) is intended to address. *See Meridian Bank v. Alten,* 958 F.2d 1226, 1230 (3d Cir.1992) ("Creditors are not required to risk having the debtor withhold or conceal assets 'under cover of a chaotic or incomplete set of books or records'" (citations omitted)).

The debtor states that he did not believe that it was necessary for him to keep financial records, likening them to grocery receipts. Sethi Dep., pp. 64–65. Even if true, this fact fails to relieve the debtor of his duty to preserve his records. It is insufficient for the debtor to assert an honest belief that he does not need to keep records. *Frommann,* 153 B.R. at 117. The debtor also states that he has been sick, and that he has had two angioplasties, and had open heart surgery in 1992–93. Sethi Aff., ¶ 2; Sethi Dep., p. 14. Even if these assertions are accepted as true, as they must be on a motion for summary judgment, the debtor has not claimed that these health problems prevented him from keeping adequate records of the sale of the 30–30 Parsons Blvd. house in 1995, of the redemption of bonds and disposition of their proceeds in 1994–1997, of the transfer of $80,000 to his daughter-in-law, or of his $100,000 in consumer purchases. (Sethi Dep., p 14). In any event, there is nothing in the record in this regard that indicates the presence of circumstances so unusual that ordinary record keeping is not required. *Id.; Pimpinella,* 133 B.R. at 698; *cf. Rissman v. Mann (In re Mann),* 102 B.R. 873, 874 (Bankr.S.D.Fla., 1989) (in which the court found that the debtor did not offer "a sufficient excuse for failing to keep any records by saying that the circumstances of going through an operation for cancer, having a mental collapse and a drug dependency problem relieved him of all financial accountability"). In short, no fact or circumstance has been alleged by the debtor that would justify the debtor's lack of adequate financial records.

Because this Court concludes that the debtor's discharge must be denied under § 727(a)(3), it is unnecessary to decide whether the debtor's discharge should also be denied under § 727(a)(5).

### Conclusion

For all of the foregoing reasons, there is no genuine issue of material fact to be tried, and summary judgment should be entered denying the debtor a discharge pursuant to § 727(a)(3) of the Bankruptcy Code. SBI is directed to settle an order and a judgment consistent with this opinion.