**In re John Raymond HERBERT, Sr., Debtor.**

**Carolyn Jones, Plaintiff,**

v.

**John Raymond Herbert, Sr., Defendant.**

**Bankruptcy No. 802–88286–478.
Adversary No. 803–8129–478.**

United States Bankruptcy Court,
E.D. New York.

Jan. 29, 2004.

---

Law Offices of Louis D. Stober, Jr., LLC, By Stephen G. Walko, Garden City, NY, for Plaintiff.

Dennis J. O'Sullivan, Bayside, NY, for Defendant.

## MEMORANDUM DECISION

DOROTHY EISENBERG, Bankruptcy Judge.

This matter is before the Court pursuant to an adversary proceeding filed by Carolyn Jones ("Plaintiff") against John Raymond Herbert, Sr. ("Defendant" or "Debtor"), wherein Plaintiff seeks to have Defendant's discharge barred and seeks to have a judgment debt deemed non-dischargeable. Based on the pleadings, memoranda and relevant case law, and after holding a trial, the Court denies Plaintiff's claims under 11 U.S.C. § 727 and finds that the judgment debt owed by Defendant to Plaintiff is non-dischargeable pursuant to 11 U.S.C. § 523(a)(5). The following consists of the Court's findings of fact and conclusions of law as mandated by Fed. R. Bankr.P. 7052.

## FACTS

On or about May 6, 1975, Plaintiff and Defendant were validly married in the State of New York. Plaintiff and Defendant have two children, John R. born on September 17, 1975, and Erica A., born on November 27, 1978. During the course of the marriage, Plaintiff and Defendant purchased a home and real property located at 38 Brand Drive, Huntington, New York (the "Premises"). Plaintiff and Defendant owned the Premises as tenants by the entirety. In addition to the Premises, Plaintiff and Defendant also owned a home in the Poconos (the "Poconos Property").[1] Sometime during the middle 1980's, Plaintiff and Defendant began experiencing difficulty in their marriage, and in 1986, Defendant commenced a divorce action against Plaintiff.

On March 3, 1988, Plaintiff and Defendant entered into a stipulation of settlement of the divorce action (the "Stipulation"). Pursuant to the Stipulation, Defendant was to keep the Poconos Property. Defendant was also to pay to Plaintiff the total amount of $105,000. The sum of $25,000 was to be paid within ninety days of the date of the Stipulation, the sum of $50,000 was to be paid within six months of the date of the Stipulation, and the remainder ($30,000) was to be paid within three years of the date of the Stipulation. Upon receipt of the first payment, Plaintiff was to vacate the Premises and execute a Bargain and Sale Deed conveying all interest in the Premises to Defendant, which deed was to be held in escrow by Defendant's attorney and recorded upon receipt by Plaintiff of the second payment of $50,000. Pursuant to the Stipulation, in the event that Defendant did not pay the sum of $75,000 as provided for in the Stipulation, Plaintiff was granted the option to purchase the Premises for $15,000. With regard to the remaining $30,000, Plaintiff had the option to place a mortgage on the Premises for the $30,000 to be paid three years from the date of the Stipulation or upon the sale of the Premises. Plaintiff was to bear the costs of placing the mortgage on the Premises, which was to act as security for the final payment due to her in the amount of $30,000.

With regard to the jointly owned personalty, the Stipulation provides that said personalty was to be divided between the parties, with the exception of certain enumerated items. Plaintiff was directed to have the mortgage on the Premises kept current through March 1988, and upon Plaintiff's departure from the Premises, each party was to make half of the mortgage payment. Defendant was responsible for making the payment for a joint debt due to the IRS as well as joint debts owed to Martin Bregman and to the Stony Brook Childrens Hospital. Plaintiff was to pay the joint debt owed to Long Island Jewish Hospital.

Plaintiff and Defendant were to share joint custody of the children, however John R. was to reside with Defendant and Erica A. was to reside with Plaintiff. Defendant was to pay Plaintiff $112 per month for child support until the earliest occurrence of one of the following three events: 1) Erica reaching 21 years of age; 2) Erica residing with Defendant; or 3) Erica working full time or becoming legally emancipated. In the event that John R. resided with Plaintiff, then Defendant was to pay to Plaintiff an additional $112 per

---

1. The value of the Poconos Property, and whether the Poconos Property was encumbered by a mortgage, was not revealed to the Court either through testimony or documentary evidence.

month. Any medical expenses for the children not covered by Defendant's medical insurance were to be divided by Plaintiff and Defendant. Each party was responsible for his or her own legal fees incurred in connection with the divorce proceeding. The Stipulation states that Plaintiff made no claims for maintenance or alimony from Defendant, and Defendant specifically waived any claim or right to alimony or maintenance.

The Stipulation provides that it shall not be merged into the Judgment of Divorce. The Judgment of Divorce was entered on June 3, 1988. The Judgment of Divorce makes no references which are inconsistent with the Stipulation.

At the time of entry into the Stipulation, Plaintiff was a licensed registered nurse, and was employed as a private nurse. Plaintiff testified at trial that in 1987, she earned an annual gross salary in the neighborhood of $25,000. Defendant was a retired corrections officer, who at the time of entry into the Stipulation, was receiving disability and social security payments in the aggregate monthly amount of $2,000. He also was a licensed practical nurse, but stated that he was not employed as of the date of the Stipulation. According to an appraisal prepared as of June 5, 1987, the Premises was valued at $160,000, and was encumbered by a mortgage in the amount of $36,000.

Defendant made the first $25,000 payment to Plaintiff pursuant to the terms of the Stipulation. According to Defendant, he borrowed the funds from his father. As the Stipulation required, Plaintiff vacated the Premises and executed a Bargain and Sale Deed conveying all interest in the Premises to Defendant, which Deed was to be held in escrow by Defendant's attorney

and recorded upon receipt of the second payment in the amount of $50,000.

The next payment in the amount of $50,000 was due on September 3, 1988. Plaintiff received a check in the amount of $50,000 dated September 2, 1988 from Goldstein & Rubinton, P.C., counsel to Defendant. After the payment of the $50,000, the Deed transferring Plaintiff's interest in the Premises to Defendant was released from escrow to Defendant. Ultimately, Plaintiff used the funds received from Defendant as part of the down payment to purchase a home in 1992. During the time period after vacating the Premises and buying her own home, Plaintiff rented an apartment as shelter for herself and daughter.

In the meantime, on September 7, 1988, Plaintiff exercised her option to secure her final payment of $30,000 by having Defendant execute a note and mortgage on the Premises in the sum of $30,000. The note and mortgage were delivered to Plaintiff on October 8, 1988. Plaintiff did not record the mortgage granted by Defendant until February 14, 1989.

Eleven days prior to the date that the note and mortgage from Defendant were mailed to Plaintiff, Defendant had transferred his interest as sole owner in the Premises to Gloria Moore, a friend of his, on September 27, 1988. Thereafter, Gloria Moore applied for and was granted a mortgage loan on the Premises in the amount of $147,000. The mortgage loan to Ms. Moore closed on September 28, 1988. Approximately three (3) weeks after the deed held by Defendant's counsel was transferred to Defendant and one (1) day after Defendant transferred his ownership interest to Ms. Moore.[2] Plaintiff was never informed that this transaction was to take place. Because Plaintiff could not record

---

**2.** Under normal mortgage procedures it is not likely that a mortgage loan would close one

(1) day after the applicant obtained title to the Real Property

her mortgage on the Premises until after the transaction between the Debtor and Ms. Moore had taken place, the title agent and the lender could not have known of Plaintiff's lien on the Premises. According to Defendant, he received $50,000 of the mortgage proceeds which were used to make the second payment owed to Plaintiff.[3] The rest of the funds were used to pay off the existing mortgage, to pay for the fees and expenses of the refinancing, and the remainder went to Ms. Moore.

Thereafter, Ms. Moore failed to make the mortgage payments for the Premises and in the early 1990's a foreclosure action was commenced by the mortgagee. In 1993 or 1994, Defendant, who continued to reside at the Premises presumably as a tenant, was constrained to vacate the Premises.

Plaintiff never received the last installment of $30,000 which was due to her pursuant to the Stipulation. Plaintiff commenced an action against Defendant seeking to enforce the terms of the Stipulation, and obtained a money judgment against Defendant dated November 3, 1994. Pursuant to the money judgment, Plaintiff was awarded $30,000 plus interest in the amount of $18,450 from March 1988 to the date of the judgment, as well as $1,560 in counsel fees. Thereafter, Plaintiff obtained an order of income execution dated January 26, 1995 against Defendant, and Defendant's then-employer, the Christian Nursing Registry, was ordered to deduct $500 per week from Defendant's income to satisfy the judgment. It is unclear whether Plaintiff has obtained any funds as a result of this income execution.

On July 28, 1995, Plaintiff commenced an action against Defendant, Gloria Moore, Greenpoint Savings Bank as the mortgag-ee of the Premises, Commonwealth Land Title Insurance Company as abstract company and others pursuant to which Plaintiff was seeking to recover for the alleged negligence, misrepresentation, fraud and fraudulent inducement by the named defendants. Although Plaintiff did not know the current state of the litigation, a judgment dismissing the adversary proceeding as to Greenpoint Savings Bank, counsel to Greenpoint Savings Bank and Commonwealth Land Title Insurance Company was entered on July 29, 1997.

On November 18, 2002, Defendant filed a petition for relief under Chapter 7 of the Bankruptcy Code. In Schedule B of his petition, Defendant lists over $50,000 due from Plaintiff as an account receivable. In the description contained on Schedule B, the Debtor also states, "[h]owever, Debtor owne [sic] a property settlement to former spouse in an equal amount, possible offset." According to Defendant, this sum represents amounts owed from Plaintiff for the support of their daughter, Erica. In Schedule F of his petition, Defendant lists Plaintiff's judgment in the aggregate amount of $49,894.00 as an unsecured debt and states; "[h]owever, ex-spouse is liable to Debtor for support in an equal amount."

Plaintiff commenced this adversary proceeding against Defendant on February 14, 2003. Plaintiff asserts three causes of action against Defendant:

Count I—Defendant, with intent to hinder, delay or defraud Plaintiff, transferred the Premises to a third party, in violation of 11 U.S.C. § 727(a)(2)(A).

Count II—Defendant concealed, destroyed or failed to keep or preserve any recorded information, including books, documents, records and papers, from

---

**3.** Defendant testified that he used $50,000 from Ms. Moore's refinance to make the second payment owed to Plaintiff pursuant to the Stipulation, but he never explained how Plaintiff received the payment prior to the date of the refinancing by Ms. Moore.

which the pre-petition financial condition of Defendant's debt to Plaintiff could be ascertained, in violation of 11 U.S.C. § 727(a)(3).

Count III—The debt owed to Plaintiff in the amount of $30,000 plus interest (totaling $62,400 as of March 3, 2003) is non-dischargeable pursuant to 11 U.S.C. § 523(a)(5).

Defendant filed an Answer dated March 4, 2003, wherein Defendant denied all of the relevant allegations. The Answer contains no counterclaims, but Defendant alleged that he was owed approximately $50,000 for the support of his daughter, Erica. On September 15, 2003 a trial was held and Defendant withdrew any monetary claims against Plaintiff. Thereafter, the matter was marked submitted.

## DISCUSSION

This adversary proceeding contains three counts. Two of the counts are based on subsections of 11 U.S.C. § 727(a), and the last count is based on 11 U.S.C. § 523(a)(5). The Court shall consider the claims in the order in which they are listed in the complaint.

### A. Discharge of the Debtor.

■ In general, objections to discharge are to be strictly construed against Plaintiff and liberally construed in favor of the debtor. *Bank of Pennsylvania v. Adlman (In re Adlman)*, 541 F.2d 999, 1003 (2d Cir.1976). Plaintiff has the burden of establishing each element of the objection by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Once Plaintiff has established a prima facie case, the burden then shifts to the debtor to rebut the evidence. *Congress Talcott Corp. v. Sicari (In re Sicari)*, 187 B.R. 861, 870 (Bankr. S.D.N.Y.1994) (other citations omitted).

1. 11 U.S.C. § 727(a)(2)(A).

■ This section of the Bankruptcy Code provides:

(A) The court shall grant the debtor a discharge, unless—

\*      \*      \*      \*      \*      \*

(2) the debtor, with intent to hinder, delay, or defraud a creditor ... has transferred, removed, destroyed, mutilated or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition ...

Thus, in order to fall within this exception to the debtor's discharge, a transfer or concealment of property must have taken place, and such act must have been done to hinder, delay or defraud a creditor. Furthermore, both of these components must have taken place within one year of the filing date, which in this case means between February 13, 2002 and February 13, 2003.

■ The transfer or concealment in question is the transfer of the Premises from the Debtor to Gloria Moore, which occurred in September, 1988, over fourteen years prior to the date of this filing. The only way that this cause of action can apply to the facts of this case is if the Court finds by a preponderance of evidence that Defendant retained an interest in the Premises post-transfer, and concealed such retention of interest during the year before the filing of his petition in bankruptcy:

Under the "continuous concealment" doctrine, a concealment will be found to exist during the year before bankruptcy even if the initial act of concealment took place before this one year period as long as the debtor allowed the property to remain concealed into the critical year. *See In re Olivier*, 819 F.2d 550, 555 (5th Cir.1987) (discussing "the well-

settled doctrine that ... the concealment of an asset that continues, with the requisite intent, into the year before bankruptcy constitutes a form of concealment which occurs within the year before bankruptcy"). This doctrine does not negate the "act" requirement of § 727 but merely recognizes that a failure to reveal property previously concealed can, in some circumstances, properly be considered culpable conduct during the year before bankruptcy warranting a denial of discharge.

*Rosen v. Bezner*, 996 F.2d 1527, 1531 (3rd Cir.1993).

■ The continuous concealment doctrine does not apply to the facts of this case. Although it may be true that Defendant transferred the Premises to thwart Plaintiff's attempts to collect the final $30,000 owed by transferring the Premises to Ms. Moore, and Defendant may have retained an interest in the Premises for some period of time thereafter, the Premises were eventually sold pursuant to a foreclosure action more than seven years prior to the filing of the Petition. Therefore, Defendant did not retain the requisite interest in the Premises within the one year prior to the filing date of this petition. In addition, Plaintiff had knowledge of the transfer in 1992, and certainly by July, 1995, when she commenced an action against Defendant and Ms. Moore. For these reasons, the Court dismisses the first count of the complaint pursuant to 11 U.S.C. § 727(a)(2)(A).

2. 11 U.S.C. § 727(a)(3).

■ The second count of the complaint states that Defendant is not entitled to a discharge because he has concealed, destroyed, or failed to keep or preserve any recorded information, including books, documents, records and papers, from which the prepetition financial condition of De-

fendant's debt to Plaintiff might be discovered. Pursuant to 11 U.S.C. § 727(a)(3), a debtor's discharge shall be denied if:

> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

In order to prevail on this claim, Plaintiff would have to prove by a preponderance of the evidence that Defendant failed to keep books and records from which creditors could determine his financial condition or business transactions. *Koufman v. Sheinwald*, 83 F.2d 977 (1st Cir.1936); *Office of the Comptroller General of the Republic of Bolivia v. Tractman*, 107 B.R. 24 (S.D.N.Y.1989).

■ The Court of Appeals for the Second Circuit has set the standard for disclosure under this subsection of the Bankruptcy Code in *In re Underhill*, 82 F.2d 258 (2nd Cir.), *cert. denied sub nom Underhill v. Lent*, 299 U.S. 546, 57 S.Ct. 9, 81 L.Ed. 402 (1936). According to the Second Circuit, the focus of the inquiry is on the debtor's presentation of an accurate and complete account of his financial affairs:

> The purpose and intent of section 14b of the Bankruptcy Act [predecessor to § 727 of the Bankruptcy Code] is to make the privilege of discharge dependent on a true presentation of the debtor's financial affairs. It was never intended that a bankrupt, after failure, should be excused from his indebtedness without showing an honest effort to reflect his entire business and not a part merely. To be sure, there may be records which are not books; but it is intended that there be available written

evidence made and preserved from which the present financial condition of the bankrupt, and his business transactions for a reasonable period in the past may be ascertained.

82 F.2d at 260.

The standards set forth in *Underhill* remain applicable to this date. *State Bank of India v. Sethi (In re Sethi)*, 250 B.R. 831, 837 (Bankr.E.D.N.Y.2000); *In re Miller*, 97 B.R. 760, 763 (Bankr. W.D.N.Y.1989). A debtor has an obligation to provide sufficient information to the trustee and the creditors to permit them to trace the debtor's transactions and determine the debtor's current financial status. A party objecting to a debtor's discharge has the burden of establishing that the debtor failed to keep and maintain adequate books and records, and that such failure renders it impossible to determine the debtor's true financial condition and identify business transactions. *In re Sethi*, 250 B.R. at 838 (other citations omitted).

Plaintiff has failed to meet her burden of proof on this claim. Plaintiff never elicits that Defendant failed to keep records regarding his financial condition or his business transactions to permit creditors to determine his financial status. Rather, Plaintiff focuses on the fact that Plaintiff was never advised by Defendant that the Premises were transferred to Ms. Moore before her mortgage on the Premises could be recorded, thereby rendering the mortgage a nullity. It is true that the facts support a finding that the transfer of the Premises to Ms. Moore was never disclosed by Defendant to Plaintiff, and that she only discovered the transfer in 1992 based on her own inspection of records. However, there is no indication that Defendant has withheld documents from the creditors of this case or from the Trustee which are relevant to Defendant's cur-

rent financial picture. In addition, there is no evidence that Defendant failed to disclose information in his petition regarding his financial history. Defendant lists the money judgment owed to Plaintiff, which the Court finds is adequate to describe his financial obligations to Plaintiff. The fact that Defendant transferred the Premises to Ms. Moore in 1988 which precluded Plaintiff from recording her mortgage on the Premises is not germane to Defendant's financial history—it is the resulting money judgment based on Defendant's failure to pay the last installment owed to Plaintiff pursuant to the Stipulation which must be revealed, and which Defendant does reveal.

Defendant provided an adequate description of his current financial condition in his petition and sufficient information regarding his financial history to satisfy this Court and the requirements of 11 U.S.C. § 727(a)(3). Based on Plaintiff's failure to establish by a preponderance of the evidence that Defendant concealed, destroyed, mutilated, falsified or failed to keep or preserve any recorded information, including books and records from which Defendant's financial condition could be ascertained, the second count of the complaint is dismissed.

**B. Dischargeability of the Debt owed to Plaintiff.**

Pursuant to the third and final count contained in the complaint, Plaintiff seeks to have the judgment debt owed by Defendant deemed nondischargeable pursuant to 11 U.S.C. § 523(a)(5). This subsection excepts from discharge debts:

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination

made in accordance with State or territorial law by a governmental unit, or property settlement agreement . . .

This section of the Bankruptcy Code codifies the concerns that Congress has in protecting former spouses of debtors and their offspring, and reflect a public policy which favors the enforcement of family obligations. *Falk & Siemer v. Maddigan (In re Maddigan)*, 312 F.3d 589, 596 (2d Cir.2002) (other citations omitted). These concerns are a counterbalance to the general goal of providing a fresh start to debtors, free from the burden of their debts. *Id.* The Court of Appeals for the Second Circuit recognizes the importance of enforcing family obligations despite the debtor's right to a discharge, and has determined that "among the concepts to be given broad interpretation is the meaning of 'in the nature of support.'" *Id.* (citing *In re Spong*, 661 F.2d 6, 9 (2d Cir.1981)) (other citations omitted).

■■■■■ Keeping these competing interests in mind, the Court examines the judgment debt owed by Defendant to Plaintiff to determine its true nature. In making this determination, the Court is not bound by the language of the Stipulation or Judgment of Divorce, but instead must examine the intent of the parties and the substance of the obligation itself. *Kubera v. Kubera*, 200 B.R. 13, 16 (W.D.N.Y.1996) (citing *Shaver v. Shaver*, 736 F.2d 1314 (9th Cir.1984) and *In re Eisenberg*, 18 B.R. 1001 (Bankr.E.D.N.Y. 1982)). Among the factors which the Court is to consider are whether the parties intended to create a support obligation, the length of the marriage, the earning power of the spouses, whether there were dependent children of the marriage and whether the obligation in question had the actual effect of providing support. *In re Eisenberg*, 18 B.R. at 1003;

and *In re Cacolici*, 108 B.R. 578, 583 (Bankr.N.D.Ohio, 1989).

■■■■ The Stipulation states that both Plaintiff and Defendant waive any right to support and maintenance, but as set forth above, these statements are not dispositive of the issue. The parties to this adversary proceeding were married for almost thirteen years and had two minor children. Plaintiff was earning approximately $25,000 in gross income per year at the time of the divorce, and Defendant received approximately $2,000 per month in disability and pension payments, which was measurably greater than Plaintiff's net salary at the time. Plaintiff and Defendant split custody of the children, with each parent taking one child, except for a period of approximately two years when both children lived with Defendant. Unless Plaintiff was awarded either the Residence or the Poconos Property, Plaintiff and Erica would have no shelter, and no other marital assets existed to provide them with the means to purchase shelter. Plaintiff was awarded neither property, but was awarded the sum of $105,000. Clearly, this sum was intended to be used to provide shelter for Defendant's daughter and his ex-spouse. The portion of this award which was actually paid over to Plaintiff was ultimately used as a down payment for a home in 1992.

The structure of the payments to Plaintiff provides further evidence that the payments to Plaintiff were meant for her support and maintenance and for the support and maintenance of Defendant's daughter. Plaintiff was relinquishing any rights she had to own or occupy the Premises in exchange for the receipt of the first two payments. Thereafter, in order to protect her rights to the third payment, Plaintiff was entitled to place a mortgage on the Premises, payable in three years by Defendant. In relinquishing her use of the

Premises, Plaintiff would need to obtain other premises as a residence for herself and her daughter. In exchange for losing her interest in the Residence, Plaintiff was to receive payment.

Other courts examining this issue have drawn the same conclusions. In *In re Cacolici*, the Bankruptcy Court for the Northern District of Ohio made the following findings:

> Without the division of marital assets provided for in the Divorce Decree and Sale Order, there were no assets to fund [Plaintiff's] basic needs. "... [I]f a settlement agreement fails to provide explicitly for spousal support, the court may presume that a so-called property settlement is intended for support, when circumstances indicate that the recipient spouse needs support." *In re Singer*, [787 F.2d 1033 (6th Cir.1986)] at 1035, citing with approval *Shaver v. Shaver*, 736 F.2d 1314 (9th Cir.1984). *See also In re Leupp*, 73 B.R. 33 (Bankr.N.D.Ohio 1987).

108 B.R. at 584.

Plaintiff needed the funds awarded in the Stipulation to provide the means for obtaining shelter and other basic needs for her and their daughter, who was only ten (10) years old at the time. The fact that Defendant was to pay child support did not mitigate Plaintiff's need to obtain and provide shelter, warmth and a secure environment for herself and her daughter, which is in the nature of support or maintenance. Child support payments are intended to cover other expenses the child may require. As another court noted in *Matter of Johnson*, 156 B.R. 338, 341 (Bankr. M.D.Fla.1993);

> Plaintiff's interest in her marital residence, ... was converted to a value by a state court .... Plaintiff's homestead was converted to a payment which could

enable her to reinvest in a new homestead. Clearly, this cashout is in the nature of alimony, maintenance or support. Otherwise, a mechanism would be created which would disenfranchise any spouse when not awarded the actual homestead in a dissolution action.

The Court agrees with this reasoning, and finds that the outstanding obligation owed by Defendant to Plaintiff, which was reduced to a judgment in the amount of $30,000 dated November 14, 1994, plus interest from March 1988 to the present is non-dischargeable under 11 U.S.C. § 523(a)(5). To the extent that Plaintiff was successful in garnishing Defendant's wages to satisfy the judgment, that amount shall be deducted from the claim. The counsel fees awarded in the judgment dated November 14, 1994 in the amount of $1,560.00 are also non-dischargeable as they are part and parcel of the non-dischargeable debt. The fees were incurred in enforcing the Stipulation, and attorneys fees incurred in litigation over support and maintenance are more in the nature of support than property division. *Filbeck v. Clegg (In re Clegg)*, 189 B.R. 818, 821 (Bankr.N.D.Okla.1995) (citing *In re Jones*, 9 F.3d 878, 881 (10th Cir.1993), and *In re Poe*, 118 B.R. 809, 812 (Bankr.N.D.Okla. 1990)).

### CONCLUSION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and (J).

2. . The Court dismisses the first count of the complaint pursuant to 11 U.S.C. § 727(a)(2)(A). Although Defendant did transfer the Premises to a third party which resulted in prejudice to Plaintiff, a judgment creditor of Defendant, the Defendant did not retain an interest in the Premises within the one year prior to the

filing date of this petition. In addition, the actions of Defendant do not amount to a continuous concealment of the transfer to a date within one year of the bankruptcy filing. Any concealment would have ended in 1993 or 1994, when the Premises were foreclosed on and Defendant no longer had a possessory interest in the Premises.

3. Based on Plaintiff's failure to establish by a preponderance of the evidence that Defendant concealed, destroyed, mutilated, falsified or failed to keep or preserve any recorded information, including books and records from which Defendant's financial condition could be ascertained, the second count of the complaint is dismissed. Defendant's failure to describe his transfer of the Premises to Ms. Moore in 1988, and his actions with regard to the transaction with Ms. Moore, may have been fraudulent as to Plaintiff. However, these actions do not give rise to denial of Defendant's discharge pursuant to 11 U.S.C. § 727(a)(3).

4. The Court finds in favor of Plaintiff on the third count of the complaint pursuant to 11 U.S.C. § 523(a)(5), as the $105,000 awarded to Plaintiff pursuant to the Stipulation is in the nature of support or maintenance. Therefore, the judgment entered in favor of Plaintiff and against Defendant in the amount of $30,000 dated November 14, 1994, plus interest from March 1988 to the present is non-dischargeable under 11 U.S.C. § 523(a)(5). The counsel fees awarded in the judgment dated November 14, 1994 in the amount of $1,560.00 are also non-dischargeable.

Settle an Order in accordance with this decision.