**In re Raymond J. RICHARDSON and Virginia Marie Richardson, Debtors.**

**Scott Werner, Plaintiff,**

v.

**Raymond J. Richardson and Virginia Marie Richardson, Defendants.**

Bankruptcy No. 04–21622.
Adversary No. 04–2066.

United States Bankruptcy Court, D. Connecticut.

March 14, 2006.

Randall S. McHugh, Esq. and Charles Basil, Esq., Reiner, Reiner & Bendett, Farmington, CT, for Plaintiff.

Raymond J. Richardson and Virginia Marie Richardson, West Hartford, CT, Pro–Se Debtor/Defendants.

### MEMORANDUM OF DECISION

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

### I.

Raymond R. Richardson ("the debtor") and Virginia M. Richardson (together "the debtors") filed a Chapter 7 bankruptcy petition on May 27, 2004, and Thomas C. Boscarino ("the trustee") was appointed trustee of the debtors' estate. Scott Werner ("the plaintiff"), on August 19, 2004, filed a complaint against the debtors, requesting that they be denied a discharge pursuant to Bankruptcy Code § 727(a)(3) (failure to keep records) or § 727(a)(4) (false oath). The court held a hearing on the complaint on January 11, 2006, after which the parties filed memoranda of law in support of their positions.

### II.

### BACKGROUND

The debtors prepetition and presently own and operate a jewelry business in West Hartford, Connecticut. In addition to selling jewelry from inventory, the debt-

ors sell items held on consignment from clients. At the meetings of creditors held pursuant to Bankruptcy Code § 341(a), the debtor provided copies of his inventory as of the petition date and explained how he updated the inventory monthly, indicating any purchases and sales. The debtor testified that he had continued to update such records post-petition at the request of the trustee, who had given him permission to continue to operate the business.[1] The debtor also provided copies of the signed consignment receipts provided to consignors and of the consignment control sheets, kept in a binder, identifying the items on consignment from each customer. The debtor testified that all sales are recorded in a sales journal.

The trustee, on August 13, 2004, after examining the debtors and inspecting their premises, filed a "Trustee's Report of No Distribution," which stated: "that I have made a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate; and that there is no property available for distribution from the estate over and above that exempted by law." (Exh. B.)

The plaintiff testified that he was also in the jewelry business and over a period of about twelve years had provided numerous items to the debtors to be sold under a consignment arrangement. In 2001, the plaintiff and the debtor entered into an agreement whereby, in addition to continuing to sell the plaintiff's goods on consignment, the debtors would sublet a retail store from the plaintiff and share any net profits from the business. The relationship deteriorated and the plaintiff subsequently brought an action against the debtor in state court to recover unpaid rent, the value of missing consigned merchandise, and the plaintiff's share of any net profits. The state court, on February 18, 2004 entered a judgment in favor of the plaintiff for $16,076 plus costs, and ordered the debtor to provide an accounting to determine net profits. In addition, the plaintiff, the holder of two junior mortgages on the debtors' home, held unsecured claims arising from the deficiency when a senior mortgagee foreclosed on the home.

## III.

### DISCUSSION

Bankruptcy Code § 727(a) provides, in relevant part:

(a) The court shall grant the debtor a discharge, unless-

. . .

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

(4) the debtor knowingly and fraudulently, in or in connection with the case-

(A) made a false oath or account;

(B) presented or used a false claim;

(C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or

(D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs. . . .

Because denial of discharge is an "extreme penalty," the provisions of § 727 are "con-

---

1. Sales were of consigned goods (not property of the estate) or from inventory exempted by the debtors in Schedule C of their petition pursuant to Bankruptcy Code § 522(d)(5).

strued strictly against those who object to the debtor's discharge and liberally in favor of the bankrupt." *State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300, 1310 (2d Cir.1996) (citation and quotation marks omitted). "At the trial on a complaint objecting to a discharge, the plaintiff has the burden of proving the objection." Fed. R. Bankr.P. 4005.

### A.

### § 727(a)(4)

■ The plaintiff alleges in the complaint that the debtors' signatures on the petition constitutes a false oath because the debtors owned one or more motor vehicles not scheduled therein. The debtor acknowledged that he had inadvertently failed to schedule a 1989 Chrysler, in poor condition, not running and valued at no more than $250, but that he voluntarily disclosed it to the trustee at the meetings of creditors.[2] The plaintiff has produced no evidence to support a contention that the omission was knowing. Accordingly, the court finds that the debtors' omission was inadvertent, not knowing and fraudulent, and does not support a denial of discharge pursuant to § 727(a)(4).

The complaint further alleges that the debtors failed to schedule one or more bank accounts. The debtor testified that, as of the petition date, the debtors maintained only the two checking accounts listed in their schedules, and that their only other account was one they opened post-petition to handle their post-petition transactions. The plaintiff has failed to provide any evidence of the existence of any undisclosed bank account.

### B.

### § 727(a)(3)

■ "The party objecting to discharge has the burden of proof to show that the debtor has failed to keep and maintain adequate books and records, and that such failure renders it impossible to discern the debtor's true financial condition and identify material business transactions." *State Bank of India v. Sethi (In re Sethi)*, 250 B.R. 831, 838 (Bankr. E.D.N.Y.2000) (citations omitted). "The standard for evaluating the adequacy of a debtor's record keeping enunciated by the Second Circuit in *Underhill* is applicable today ... ." *Id.* "The law is not unqualified in imposing a requirement to keep books or records, and it does not require that if they are kept they shall be kept in any special form of accounts. It is a question in each instance of reasonableness in the particular circumstances." *In re Underhill*, 82 F.2d 258, 260 (2d Cir.1936), *cert. denied*, 299 U.S. 546, 57 S.Ct. 9, 81 L.Ed. 402 (1936) (applying the corresponding provision under the former Bankruptcy Act).

■ "Although the plaintiff has the burden of proving the inadequacy of the debtor's records, it is the debtor who has the obligation of producing financial records in the first place from which the debtor's financial condition may be ascertained." *Sethi*, 250 B.R. at 838. At the hearing and at the meetings of creditors, the debtor provided copies of his inventory as of the petition date and explained how he updated the inventory monthly, indicating any purchases and sales. The debtor also provided copies of the signed consignment receipts provided to consignors and of the lists, kept in a binder, of items on

---

**2.** Another vehicle referred to by the plaintiff, a 1993 Dodge with a blown engine, was given

to the debtor post-petition by his brother.

consignment from each customer. The debtor testified that all sales are recorded in a sales journal. The debtor testified that he had provided this information to the trustee who later verified such when the trustee visited the debtors' store.

The plaintiff refers to certain state and local disclosures required in order to assist police in identifying persons who may seek to sell stolen goods to retailers, such as the debtors. Such reports, intended to identify non-business sellers of possible stolen goods, provide no essential financial information that is not included elsewhere in the records provided by the debtors.

The complaint alleges that "the defendants have willfully and intentionally failed to disclose transactions in the purchase and sale of one or more Rolex watches and bulk gold." (Complaint ¶ 9.) The only such transactions to which the plaintiff provided any evidence were the debtor's purchase of a Rolex watch for $1,800 and his sale of some scrap gold for $1,350, both of which occurred two months post-petition on July 27, 2004, and neither of which, the debtor testified, involved any property of the estate. At the hearing, the plaintiff also questioned whether the debtors had kept records of the pre-petition sale of a diamond. The debtor testified that he had brokered that sale; that the diamond came into the store and was sold on the same day; and that the transaction was duly recorded in the sales journal with the diamond having been purchased for $5,000 and sold for $6,000. An error in spelling the seller's name, acknowledged by the debtor, does not affect the adequacy of the debtors' records in ascertaining the debtors' financial condition or make it impossible to identify the transaction at issue.

The plaintiff further contends that the debtors "were unable to produce any con-signment contracts ... and in fact admit that no such consignment contracts exist." (Complaint ¶ 7.) The debtors make no such admission. At the hearing, the debtors put into evidence copies of the signed "receipts" signed by the debtor and noting the items received as on consignment; the listings by consignor of all items held on consignment; and the testimony of a long-time consignor as to the terms of the consignment agreements. Further, the plaintiff himself had, for years, had consigned jewelry to the debtors under the same arrangement.[3]

The court concludes that the debtors have satisfied their initial burden of producing their financial records, and that the plaintiff has not satisfied his burden of proving the debtors' records are insufficient, making it impossible to determine their financial condition or to identify their material business transactions.

## IV.

### CONCLUSION

In accordance with the forgoing discussion, the court concludes that the plaintiff has not met his burden of proof. Judgment will enter that the objection to discharge be denied and the discharge of both debtors in this case enter.

---

3. The plaintiff's argument concerning whether consignors were required to file financing statements is inapposite to the issue in the present proceeding—whether the debtors' records are adequate to determine their financial situation.